TELEGRAPH COMPANY *v.* MUNFORD, Ex'rx, Etc.

(*Nashville.* January 3, 1889.)

1. TELEGRAPH COMPANIES. *Contract against liability for negligence of connecting line valid.*

A telegraph company, that receives a message to be sent over its own line, and becomes the sender's agent to forward it over an independent connecting line, *may, by contract with the sender, protect itself from all liability for negligence of the latter company.* Such contract is legal and valid.

Cases cited and approved: Marr *v.* Telegraph Co., 85 Tenn., 536; Brumley *v.* Railroad, 5 Lea, 401.

2. SAME. *Negligence. Proximate Cause.*

Negligence of a telegraph company, whereby the address of a message is changed in transmitting it to a connecting line, is not the proximate cause of loss occasioned by delay in its delivery; where it appears that the connecting company received the message promptly, and was not misled by the change of address, but negligently delayed delivery solely from other causes.

---

FROM WARREN.

---

Appeal in error from Circuit Court of Warren County. M. D. SMALLMAN, J.

J. W. BONNER for Telegraph Company.

MURRAY & SPURLOCK for Munford.

LURTON, J: This is an action brought by E. W. Munford, the testator of defendant in error, in his life-time, to recover damages alleged to have been sustained by delay in the transmission of a telegram. E. W. Munford, on the 11th of April, 1887, delivered to the agent of the plaintiff in error, at its office in McMinnville, Tennessee, a 'telegram for transmission to Tampa, Florida, of which the following is a copy:

"McMINNVILLE, TENN., April 11, 1887:
" *Col. Sam. Tate, Tampa, Florida:*
"Proposition accepted. Your draft for one thousand will be honored.
"(Signed)        E. W. MUNFORD."

The line owned and operated by the Western Union Telegraph Company did not extend to Tampa, Florida, but terminated at Jacksonville, in that State. From Jacksonville to Tampa there was a telegraph line owned and operated by the South Florida Telegraph Company, and the message in question could only be transmitted to its destination by being sent over the line of the Western Union Telegraph Company to Jacksonville, and then transferred to the South Florida Company, by whom it would be sent to Tampa. Of this fact Mr. Munford was advised by the agent who received his message for transmission. The telegram was promptly forwarded, reaching Tampa early in the afternoon of the same day.

In transmission the address of the message was changed from Col. *Sam.* Tate to Col. *Wm.* Tate. This, it is agreed, occurred on the line of the plaintiff in error before it was transferred to the connecting company. The message was not de-. livered by the South Florida Company to Col. Tate until the 13th, it having been received at Tampa on the 11th. Plaintiff below alleged that by this delay he sustained damages amounting to five hundred dollars.

In the view we take of the case it is only necessary to consider one of the defenses presented by the pleas of the plaintiff in error, and that, in substance, is that the *delay* in the delivery of the message was not occasioned by the error in transmitting the address, but resulted alone from the negligence of the agent of the South Florida Company.

The facts concerning this delay, as we find them to be from the transcript, are these: The agent of the South Florida Company at Tampa personally knew Col. *Sam.* Tate. He states that he knew of no such person as Col. Wm. Tate, and that when he received this message he believed it to be intended for Col. *Sam.* Tate; that he instructed the messenger whose duty it was to make personal delivery of messages to inquire and learn if there was a Col. Wm. Tate in Tampa, and if he could hear of no such person to take the message to Col. Sam. Tate. The messenger thus instructed says he made inquiry, and, hearing of no Wm.

Tate, undertook to deliver the message to Col. Sam. Tate; that he took it to the office of S. A. Jones, where both he and the agent say they had been requested by Mr. Jones to leave messages for Col. Tate. The messenger states, upon inquiry for Col. Tate a clerk in the office informed him that Col. Tate was then at Clear Water Harbor. · This information being communicated to the agent of the telegraph company, he, on the same day, instead of making further inquiry for Col. Tate, mailed the message addressed to Col. Sam. Tate at Clear Water Harbor, Florida. The fact, as shown by the proof, is, that Col. Tate was in Tampa on the 11th, and had been there for some days, and that he had never authorized delivery of messages for him at the office of Mr. Jones, but that, on the contrary, he was accustomed to receive his messages at his usual boarding place, which was known at least to some of the telegraph company's messengers. Two days thereafter Col. Tate called at the telegraph company's office to inquire about another message, when he was handed a copy of the telegram which had been mailed to him at Clear Water Harbor.

If the message had been delivered to him on the day it was received and mailed to Clear Water Harbor, it is conceded that the damage alleged to have been sustained would not have occurred.

The facts, as above recited, are not disputed, and establish beyond controversy that the delay in

the delivery of the message was not in consequence of the error in transmission of the address, but was the result of the subsequent and independent negligence of the South Florida Telegraph Company. The damage alleged to have been sustained was the direct consequence of delay in delivery, for Col. Tate says that he should have had no doubt, upon seeing the message, that it was for him alone, and that he should have acted upon it. The damages to be recovered, whether the *gravamen* of the action be regarded as breach of contract or a technical tort, must be limited to such as are the natural and proximate result of the injury or wrong done.

This brings us to the consideration of the question as to whether the plaintiff in error is responsible for damages which resulted alone from the negligent delay in the delivery of this message by the agent of the South Florida Telegraph Company. The message was written upon one of the usual blanks furnished by the Western Union Company. One of the printed conditions contained on this blank reads as follows: "This company is hereby made the agent of the sender, without liability, to forward any message over the lines of any other company when necessary to reach its destination." Is this a valid limitation upon the liability of the company?

Telegraph companies are not common carries, nor are they insurers, either of the accurate transmission or the sure and prompt delivery of mes-

sages.    They    are    liable,    however,    for    losses    con-
sequent  upon  their  negligence.    *Marr*  v.    *Western
Union  Telegraph  Company,*  1  Pickle,  536.

Even  common  carriers  are  not  responsible  for
losses  occurring  upon  a  connecting  line  unless  there
was  a  contract  upon  their  part  to  be  so  responsi-
ble.    That  they  may,  by  contract,  limit  their  lia-
bility  to  defaults  occurring  upon  their  own  lines
is  well  settled.    So  the  fact  that  two  lines  are
connected,  and  for  their  mutual  convenience  collect
freight  for  each  other  upon  goods  delivered  for
transmission  over  both  lines,  will  not  make  the
one  responsible  for  losses  occurring  beyond  its  own
line,  unless  it  has  contracted  so  to  be.    *Brumley*
v.  *Railroad,*  5  Lea,  401.

These  principles  applicable  to  common  carriers
seem  to  us  to  be  alike  applicable  to  telegraph
companies.    Mr.  Gray,  in  his  very  valuable  mono-
graph  upon  Communication  by  Telegraph,  in  dis-
cussing  this  limitation  found  in  the  contract  of
the  Western  Union  Company,  and  quoted  above,
says:

"Two  entirely  distinct  provisions  are  embodied
in  this  regulation.    One  provision  is  that  the  tel-
egraph  company,  in  consideration  of  receiving  full
prepayment  for  the  delivery  of  a  message  at  a
place  upon  the  line  of  another  company,  agrees  to
deliver  the  message  to  a  connecting  company,  and,
as  the  agent  of  the  sender,  to  contract  with  that
company  for  the  further  transmission  of  the  mes-
sage.    This  is  an  offer  of  special  terms  of  contract.

---
Telegraph Company *v.* Munford.
---

A telegraph company is, it seems, under an obli-
gation, by its ordinary contract, only upon receipt
of its own charges to deliver the message to a con-
necting company. It is under no obligation by that
contract to contract, as the agent of its employer,
with the connecting company for the further trans-
mission of the message, or to receive and account
for the payment for such transmission. This pro-
vision in the regulation is unquestionably reason-
able, and, with the assent of the employer of the
company, constitutes a valid and mutually benefi-
cial contract.        *      *      *      *      *      *      *

"The other provision embodied in this regulation
is that the telegraph company limits its liability to
losses occurring on its own lines. This has usually
been treated as an offer of special terms. As such
it constitutes, with the assent of the employer of
the company, a valid contract. This provision is
clearly just and reasonable. In the absence of a
partnership relation between them, one telegraph
company has no more authority over another tel-
graph company than an individual has. A telegraph
company should be entitled, therefore, to contract
specially with one who wishes to employ it that
it shall not be liable for loss occasioned by the
act of a connecting company; that that person
shall seek relief, in case of a loss, directly of the
company which causes and is under any circum-
stances finally liable for the loss." Gray on Tel.
Communication, Section 33.

That the Western Union and South Florida

Telegraph Companies were entirely distinct and independent corporations, and that no partnership relations existed between them, is admitted in the agreed statement of facts contained in the record. The case was tried by the Circuit Judge without the intervention of a jury, who, being of opinion that the error in transmission of address was the proximate cause of the damage sustained, gave judgment in favor of the plaintiff below.

This judgment is not supported by any material facts, and must be reversed, and judgment rendered here in favor of the Western Union Telegraph Company.