No. 488.

THE WESTERN UNION TELEGRAPH COMPANY *v.* STRATEMEIER.

TELEGRAPH COMPANY. — *Message.*—*Transmission over Connecting Lines.* — *Extent of Liability.* — *Failure to Deliver.* — *Unconditional Undertaking by Company.*—In the absence of an agreement to the contrary, a telegraph company which receives a message for transmission is only required to exercise good faith and diligence in transmitting the message over its own lines, and promptitude in delivering it to connecting lines, when necessary in the course of its transmission; but, where a company undertakes unqualifiedly to send a message to its destination, it will be answerable, not only for the delinquencies of its own agents, but, also, for the delinquencies of connecting companies employed in transmitting the message.

SAME.—*Estoppel.*—*Representations by Agent to Sender.*—*Acting Upon.*—Where a telegraph company, by its agent, upon enquiries made by the sender of a message, induces the sender to believe that it has a line running to, and an office at, the point of destination, and that the message will be delivered in due time, the company will be estopped from denying these represented facts as to its telegraph line and office.

SAME.—*Contract.*—*Condition Precedent.*—*Written Notice of Claim within Sixty Days.*—*Validity.*—*Waiver.*—A condition in a contract between a telegraph company and the sender of a message, requiring a claim for damages growing out of the contract to be presented in writing within sixty days from the time the claim accrues, is a condition precedent to a right to recover, and is reasonable and valid, but must be strictly construed, and is subject to be waived, as for example, by entering into an investigation upon an oral complaint, tendering money for damages, etc.

SAME.—*Mental Suffering.*—*Recovery for.*—In so far as mental suffering is the direct result of a violation of duty by a telegraph company, in failing to transmit a message, it constitutes an element of recoverable damages.

SAME.—*Failure to Deliver Message.*—*Consequent Mental Suffering.*—*Aggravated by Distress of Others.*—*Not to be Considered in Assessing Damages.*—*Effects, Remote and Consequential.*—In an action by the sender of a telegram against the telegraph company for damages for a failure to deliver the telegram announcing the death of a member of the family to another member of the same family, and the consequent failure of the person addressed to be present at the funeral, the jury, in its special finding as to the mental suffering of the plaintiff, and damages therefor, included the effect produced on the sender by the distressed mental condition of his wife, by reason of the absence of said member; such finding is invalid, being based partly upon the distressed feelings of the wife, which were too remote and consequential to be considered in the case.

From the Ripley Circuit Court.

*J. M. Butler, A. H. Snow* and *J. M. Butler, Jr.*, for appellant.

*A. Stockinger, J. H. Connelly* and *C. K. Bagot*, for appellee.

CRUMPACKER, C. J.—This action was brought by Stratemeier against the telegraph company to recover damages for negligently failing to transmit a telegraphic message delivered by the plaintiff at Batesville, Indiana, and addressed to Henry Cordes, at Oakley, Ohio, requesting the latter to notify plaintiff's daughter of the death of her brother, which occurred on the morning of the day the message was presented for transmission.

The second paragraph of answer alleged that the message was received for transmission by the defendant under a contract which contained the following stipulation: "And this company is hereby made the agent of the sender, without liability to forward any message over the lines of any other company when necessary to reach its destination." It was further alleged that it was necessary, in the course of its transmission, to send the message over the lines of the Baltimore & Ohio Southwestern Railroad Company, and defendant faithfully sent and promptly delivered it to the agents of said railroad company, to be transmitted to its destination.

The third paragraph of answer alleged that the message was received and transmitted by the defendant under a contract containing the following condition: "The company will not be liable for damages in any case where the claim is not presented in writing within sixty days after sending the message," and that plaintiff did not present his claim for damages, in writing, within that time.

The contract, consisting of the conditions printed at the head of the message blank in general use by the defendant, was set out with the answer.

In the third paragraph of reply, which was addressed to

the second paragraph of answer, plaintiff averred that he applied to the defendant's agent, at its office in Batesville, to send the message; that he was ignorant of the fact that it would be necessary to send it over the lines of any other company, and he inquired of the agent if the defendant had a line and receiving station at Oakley, and was informed that it had, and, relying upon such information as true, he delivered the message to the agent for transmission to that point and paid him fifty cents, the amount he demanded for sending it.

The seventh paragraph of reply was addressed to the third paragraph of answer, and admitted that plaintiff did not present his claim for damages, in writing, within sixty days after sending the message, as required by the contract, but alleged that he informed the defendant's agent at Batesville of his claim within twenty days after the message was sent, and such agent promised to, and did, notify the defendant's superintendent of such claim at once, and the "defendant, by its proper officers, corresponded with plaintiff and communicated with him concerning his" claim for damages, as set out in the complaint, and offered him money in settlement thereof, within sixty days after sending the message, and did not, at any time, request him to present the claim in writing.

There was a special verdict, fixing plaintiff's damages at $400, upon which judgment was rendered in his favor.

The first question for decision is based upon the action of the court in overruling the demurrer to the third paragraph of reply. In the absence of any agreement upon the subject, a telegraph company which receives a message for transmission is only required to exercise good faith and diligence in transmitting the message over its own lines and promptitude in delivering it to connecting lines, when necessary in the course of its transmission; but it may undertake, unqualifiedly, to send the message to its destination, in which event it will be answerable not only for the

delinquencies of its own agents, but also of the agents of connecting companies, whose lines may be employed in transmitting the message. But, in the present case, the relation of the appellant in respect to connecting lines is defined by contract to be that of the agent of the sender of the message, without liability. There is no doubt of the validity of this provision of the contract. There is no primary liability resting upon the receiving company for the negligence of other lines, and it may stipulate the terms upon which it will deliver a message to such other lines for transmission. *Squire* v. *Western Union Tel. Co.,* 98 Mass. 232; *Telegraph Co.* v. *Mumford, Exx.,* 87 Tenn. 190; *Western Union Tel. Co.* v. *Way,* 83 Ala. 542; *Baxter* v. *Dominion Tel. Co.,* 37 U. C. Q. B. 470.

Under the stipulation in question, appellant was required to use care and attention in sending the message over its own lines, and promptness in delivering it to a competent connecting line for further transmission, if the services of such connecting line were necessary. If this was done, appellant fully discharged its obligation under the contract. The fact that appellee did not know it would be necessary to send the message over another line would not, of itself, affect the rights of the parties under the contract, since it must be presumed that he assented to the contract, and the provision in reference to connecting lines was sufficient to charge him with notice.

In the case of the *Western Union Tel. Co.* v. *Carew,* 15 Mich. 525, the court said, respecting a similar provision: " The conditions on the back of the message, it is true, did not state where the line of this company terminated, nor what other line the message must pass over. But the reference to the terms of sending over other lines was sufficient, if the plaintiff deemed it of any importance to him, to put him upon inquiry, when the fact could at once have been ascertained." It appears, however, from the reply under consideration, that appellee did regard it of suffi-

cient importance to investigate, and was assured that the message would be sent to its destination and delivered to the person addressed over appellant's lines and by its agents, and he was induced by this assurance to entrust the message to appellant for transmission, and to pay the fee exacted for that service.  He had the undoubted right to rely upon the information given him by the agent, and, having been induced to act thereon, appellant will be estopped to assert that it did not, in fact, have a line to, and an office at, Oakley, for it is a familiar doctrine that one who, by his assurances, induces another to act upon the faith that a certain fact exists, will not be permitted to gainsay the existence of such fact.   It follows that no error occurred in the ruling upon the demurrer.

It is also maintained that the seventh paragraph of reply is demurrable.   The condition in the contract requiring the claim for damages to be presented in writing, within sixty days, is reasonable and valid, and is a condition precedent to a right to recover, but, like all other conditions, the breach of which may defeat substantial rights, it should be strictly construed, and is subject to be waived.   That condition was evidently designed to furnish appellant with reliable information respecting the claim for damages, to enable it to investigate the subject while the facts were fresh and readily accessible, and it had the unquestioned right to insist upon the literal fulfillment of the condition before giving attention to the claim.  *Western Union Tel. Co. v. Trumbull*, 1 Ind. App. 121.

But it appears, from the pleading under consideration, that appellant acted upon an oral presentation of the claim and investigated the matter.   Upon such presentation it entered into a correspondence with appellee concerning the claim, and offered him money in settlement of his damages, thus recognizing a liability without demanding of him the performance of the condition.   Having

entered upon the investigation of the claim upon appellee's oral complaint, he might well have presumed appellant would ask him for further and more accurate information if it had been desired. In the case of the *Western Union Tel. Co.* v. *Hill*, 85 Ga. 425, the message was sent under the same kind of a contract, and the plaintiff made an oral complaint to the company's agent within three weeks after the message was sent. The agent told him to wait and the matter would be investigated. About two weeks thereafter the agent informed the plaintiff that the company was not liable, and would not pay the claim. It was held that the condition requiring the claim to be presented in writing was waived. In the course of the opinion the court said: "The agent was not bound to recognize an oral demand; but if he did so, making no objection to it on the ground that it was not in writing, we think it was sufficient."

In the case of *Massengale* v. *Western Union Tel. Co.*, 17 Mo. App. 257, it was held that the promise of the general agent of the company to "look into the matter," upon an oral demand by the plaintiff, did not amount to a waiver of the condition requiring the demand to be in writing. Prof. Thompson, in his work on the Law of Electricity (section 262), says the conclusion was reached in that case upon "questionable grounds."

The doctrine of the Georgia case is supported by the principles governing similar conditions in other classes of contracts, and it meets with the unqualified approval of this court. *Havens* v. *Home Ins. Co.*, 111 Ind. 90; *Home Ins. Co.* v. *Marple*, 1 Ind. App. 411.

In accordance with these observations, it must be held that the facts contained in the reply in question constituted a waiver of the condition requiring the claim to be presented in writing.

Counsel contend that the verdict is not supported by the evidence. It was shown at the trial that appellee lived at

Batesville, Ind., with his family, consisting of his wife and four children. On the morning of the 22d of July, 1890, his son Harry, nineteen months of age, died. His daughter Lizzie was temporarily absent at the time, at Oakley, Ohio. He addressed a telegraphic message to Henry Cordes, his brother-in-law, residing at Oakley, informing him of the death of the child, and requesting him to notify Lizzie, which he presented to appellant's agent at Batesville, and paid the charge demanded for sending it. The message was accepted by such agent and transmitted to Cincinnati, thence to Chillicothe, Ohio, and thence to Oakley, but it was never delivered to the person addressed, and appellee's daughter had no notice of the death of her brother until after the funeral. She reached home four days after the message was sent, having been notified, in the meantime, by mail.

There was evidence fairly authorizing the finding that the message was sent over appellant's lines in the entire course of its transmission, and that the failure to deliver it was through the fault of its agent. Facts were also given in evidence amply supporting the finding of a waiver of the condition requiring the claim to be presented in writing within sixty days. Indeed, every essential proposition necessary to support the judgment is fairly authorized by the evidence, and the judgment can not be disturbed upon this assignment.

Upon the question of damages, it is argued that appellee's recovery should have been limited to the nominal sum paid for sending the message. The doctrine that injuries to feelings, and anxiety and distress of mind, constitute an independent element for the recovery of damages, is strongly combatted by the courts of last resort, in many of the States, upon grounds which, to say the least, *seem* to have the support of considerations of public policy, while, upon the other hand, the doctrine is maintained by the courts of other States upon principles which, it must be

admitted, appeal with great force to a liberal and enlightened sentiment of justice. In this State the doctrine was affirmed in very emphatic terms in the case of *Reese* v. *Western Union Tel. Co.*, 123 Ind. 294, and the question must now be regarded as settled, to the extent that, so far as mental suffering is the direct result of a violation of duty by a telegraph company, in failing to transmit a message, it constitutes an element of recoverable damages.

In the special verdict, the jury found, as the basis for assessment of damages, that appellee's daughter "was not present at her home, with her said father and mother, to solace and comfort them and attend the funeral of her said brother Harry. * * * That the plaintiff's said wife, on account of the absence of said Lizzie and the loss of her company, solace and comfort, suffered great mental distress and anguish, and was greatly prostrated by reason thereof, of which her said anguish, distress and prostration the plaintiff well knew; that by reason of the absence of the said Lizzie during the said time, and the loss of her company, solace and comfort, and by reason of the said distress, mental anguish and prostration of his said wife, the plaintiff suffered great mental anguish and distress; * * * that by reason of the said mental anguish, suffering, distress and anxiety of plaintiff, he was damaged in the sum of four hundred dollars."

Conclusions of law were stated by the court upon the facts found by the jury, and exceptions were entered thereto which are discussed by counsel in their briefs, but the code in this State does not contemplate such a practice. Conclusions of law are proper in connection with a special finding of facts by the court, but not with a special verdict. *Austin* v. *Earhart*, 88 Ind. 182.

But the amount of recovery is assigned as a ground for a new trial, and argued generally by counsel, so the question is properly presented for decision. There was but one instruction upon the subject of damages, and that was gen-

eral in its scope. It is obvious that the jury awarded appellee damages, not only for his own suffering and anxiety of mind, resulting from the daughter's absence, but also for distress of feelings occasioned by his wife's grief and disappointment from the same cause. Damages for mental suffering, in this class of cases, must be compensatory only, and the strongest argument against their recovery at all is that there can be no reliable standard for their measurement. That argument has influenced the courts of England and many of the States in this country to refuse them altogether, as the inevitable tendency would be to open a field for recoveries that must, necessarily, be largely speculative. But, as has been noted, the courts of this State do not incline to the doctrine that denies one who has suffered a grievous wrong at the hands of another any redress at all simply because of the difficulty of estimating his damages. But, in view of the uncertainty that must characterize all attempts to measure damages for injury to feelings, it must be deemed an unsafe expedient to enlarge the basis of recovery as defined in the Reese case, and the authorities upon which that decision is based. In matters of interest, affection and sympathy the family relation is so close that the distress of one member is reflected upon all, and a wrong inflicted upon one is suffered, in a measure, by every member of the household. This reflex, or sympathetic suffering, has never been the subject of legal cognizance in awarding damages. It is not only difficult of ascertainment, but it is secondary and consequential in its nature. If appellee may recover for his own grief and disappointment resulting directly from appellant's wrongful omission of duty, and also for the reflex distress of mind arising out of his wife's enhanced suffering, there is no reason why he may not add to this aggregate his increased suffering in sympathy with every other member of his household.

That doctrine would commit the whole subject to the realm of psychological speculation, without a single relia-

ble standard of control; it would be as a ship upon a tempestuous sea, without a rudder to guide or a compass to ascertain its course. In the case of the *Western Union Tel. Co.* v. *Cooper*, 71 Tex. 507—an action to recover damages for failing to transmit a message promptly—the court denied the husband the right to recover for injury to his feelings, occasioned by his wife's anxiety and distress. In the course of the opinion it was remarked: "His suffering could only be from alarm and sympathy for his wife's suffering; his distress is merely a reflection from her distress, and that might be very considerable, but it is too remote and consequential." It may be truthfully said that it would be difficult to avoid confounding the mental anguish, resulting directly to appellee, with that reflected from the grief of other members of his family; but that proposition can be answered by the suggestion that it would be equally as difficult to distinguish between the anguish occasioned by the death of his child and that resulting from disappointment over the absence of his daughter. These distinctions must be observed, and it is the duty of the jury to exercise their most intelligent and unbiased judgment respecting them. It may be proper for the jury to be advised of the situation and surroundings of the plaintiff, so far as they may directly tend to aggravate or lessen the sorrow and disappointment resulting from the wrong complained of, but it is not proper to consider as a substantive element of damages any mental distress arising out of sympathy with the sorrow of others.

The judgment is reversed, with instructions to grant a new trial.

Filed December 29, 1892.