LANIE LeHUE v. WESTERN UNION TELEGRAPH COMPANY.

(Filed 17 October, 1917.)

1. **Telegraphs—Negligence—Contracts—Torts—Mental Anguish—Interstate
   Messages.**

   An action will lie against a telegraph company failing in its public duty
   to promptly transmit and deliver a telegram, both in contract or tort; and
   where the message is intrastate, mental anguish is a legal ground for
   recovery of actual damages.

2. **Same—Measure of Damages.**

   In an action against a telegraph company to recover damages for its
   negligent delay in the transmission of a message, the injured party may
   sue either in contract or tort, the measure of damages in the former being
   confined to such as were in the reasonable contemplation of the parties at
   the time the contract was entered into; and in the latter, such as were
   reasonably probable under the relevant facts existent at the time of tort
   committed.

3. **Same—Transmittal of Money—Pleadings—Demurrer.**

   In an action against a telegraph company to recover damages for its
   negligent delay in transmitting by telegraph money sent by a husband to
   his wife with which to return home by train, it was alleged in the com-
   plaint that the defendant had been informed through its agents that the
   wife was away from home without money; that the telegram had been
   promptly transmitted, and while it was in the defendant's office at the ter-
   minal point, the wife, the plaintiff in the action, received another message
   from the defendant, transmitted from a different place from that of the
   first message, but in the same line of travel, announcing the death of her
   mother, stating the time and place of burial; that she would have attended
   the funeral of her mother except for the negligence of the defendant in
   not giving her the money, and that she had had a conversation with de-
   fendant's agent after the telegram of transmittal had been received and
   in time to have attended the funeral: _Held_, a case for the jury as to
   whether there was negligence by defendant, the proximate cause of plain-
   tiff's injury.

CIVIL ACTION, heard on demurrer to complaint, before *Devin, J.,* at March Term, 1917, of WAKE.

The action was to recover damages, including that for mental anguish, caused by alleged negligence of the defendant in failing to deliver a telegram.

Judgment overruling the demurrer, and defendant excepted and appealed.

*Douglass & Douglass for plaintiff.*
*Pace & Boushall and A. T. Benedict for defendant.*

HOKE, J. It is well established in this jurisdiction that, in proper instances, damages for mental anguish can be recovered for negligent failure to deliver an intrastate message, and that in case of public-service companies an action therefor will lie, either in contract or tort. *Penn v. Telegraph Co.,* 159 N. C., 306; *Va. Peanut Co. v. R. R.,* 155 N. C., 148; *Bright v. Telegraph Co.,* 132 N. C., 317.

In the former case the positions held to be controlling with us are stated as follows:

"Under certain circumstances, substantial damages for mental anguish may be recovered against a telegraph company for wrongful and negligent failure to deliver or correctly transmit a telegraphic message, independently of bodily or pecuniary injury by the sender, addressee, or the beneficiary whose interest therein has been sufficiently made known to the company. Damages for mental anguish are permitted to be recovered in this State, not only as a rule of interpretation and adjustment of the rights of the parties growing out of the contract between them, but because of our public policy, adopted and recognized as necessary to enforce the proper performance of duties incumbent on telegraph companies as public-service corporations. A party entitled to recover damages from a telegraph company for its failure in its duty to transmit and deliver a message may bring his action either in contract or in tort."

The second case was a suit against a railroad company for negligent delay in the shipment of goods, and, on the character of the action that could be brought, the same general principles were presented and approved.

In the latter action *Associate Justice Allen,* in his concurring opinion as to the right to sue in tort, quotes with approval from *Merritt v. Earle,* 29 N. Y., 122: "The liability of a common carrier does not rest in contract, but is imposed by law. It exists independently of contract, having its foundation in the policy of the law, and it is on this legal obligation that he is charged as carrier for the loss of property entrusted to him";

and later, in his opinion, proceeds as follows: "We have, then, in the case of a shipment of freight, a contract between the shipper and the carrier, by which the carrier has agreed to transport and to deliver, and the law has imposed on the carrier the duty to carry safely and to deliver within a reasonable time; and our next inquiry is, what is the remedy for a breach of the duty imposed by law? I think the shipper may, at his election, sue in contract or in tort. He may treat the obligation imposed by law as entering into and becoming a part of the contract of carriage, in which event his action would be for breach of contract, or he may sue for a breach of the public duty, which has caused him special damage, and his action would be in tort. Elliott on Railroads, Vol. 4, sec. 1693, says: 'Where there is a breach, both of contract and of duty imposed by law, as in case of loss or injury by a common carrier, the plaintiff may elect to sue either in contract or in tort.'"

A perusal of these and other authorities on the subject will disclose, too, that one principal difference as to admeasurement of damages in the two classes of actions is, that in contract the damages were such as were in the reasonable contemplation of the parties at the time the contract is entered into, while in tort they are reasonably probable under the relevant facts existent at the time of tort committed.

In the *Peanut Company* case there had been a shipment of machinery from Petersburg to Williamston, N. C., and there was negligent delay in transit while the goods were at Rocky Mount, continued and persisted in after full notice of special circumstances which made additional damages likely.

In the opinion the Court said: "This, then, being the position of the parties, if the nominal consignee and the president of the company gave the notice embodied in the proposed evidence, and there was negligent delay on the part of the defendant, after being afforded full and reasonable opportunity to correct the wrong, such negligence would constitute a tort, giving plaintiff the right to recover damages on facts as they then appeared. This is one principal difference in the elements of damages obtaining in breach of contract, and consequential damages arising from a tort. In the one case damages are recovered, as a rule, on relevant facts in the reasonable contemplation of the parties at the time the contract is made, and in the other on the facts existent or as they reasonably appeared to the parties at the time or tort committed."

While that was a railroad case, the governing principle is the same, giving the right to sue in tort when there is a breach of contract involving the breach of a duty growing out of the exercise and enjoyment of a public or *quasi* public franchise.

On application of these principles to the facts stated in the complaint and admitted by demurrer to be true, the judgment of the court is clearly

·correct. From these facts it appears that early in the morning of 22 November, 1915, plaintiff's husband, at Raleigh, N. C., remitted to plaintiff at Black Mountain, N. C., a telegraphic order for $11.45 with which to pay her fare to Raleigh, to which place she was ready and expecting to go; that the message was promptly sent and received by defendant's agent early in the morning of 22 November, and was not delivered until the middle of the day on 23 November, causing plaintiff to remain at Black Mountain till that time, without money or funds, etc., to her great damage; that at 3 o'clock p. m., while plaintiff was awaiting and expecting money from her husband to enable her to leave for Raleigh, N. C., at 4 p. m., she received a message from Falkland, N. C., announcing the death of plaintiff's mother, to be buried at that place on 23 November, and for lack of said remittance so negligently withheld she was prevented from attending her mother's funeral, to her great damage and mental anguish, etc.

The complaint then proceeds further, as follows:

"That, as plaintiff is informed and believes, the order to pay the plaintiff the sum of $11.45 was promptly sent from Raleigh and duly received by the defendant at Black Mountain early Monday morning, 22 November, to-wit, shortly after 8:30 a. m. of said day, and that the defendant knew by the sending of the said amount by the plaintiff's husband by telegraph order, and by information given by plaintiff's husband at the time of the sending of said order, that plaintiff had no money with which to pay transportation, and that defendant further knew that when plaintiff received the message announcing the death of her mother, that she had no money for transportation and other expenses, in order that she might attend said funeral, and yet at the same time defendant had in its possession at Black Mountain the said sum of $11.45 and negligently and carelessly failed to notify the plaintiff or to pay over to her the said amount, notwithstanding that plaintiff was in the office of defendant on the afternoon of 22 November, at Black Mountain, and had a conversation with the operator and agent of defendant; that on account of the negligence and carelessness of the defendant in withholding the money sent by telegraph order from Raleigh, which defendant knew was for transportation, and especially withholding same and failing to give plaintiff notice that the same had been received at Black Mountain, after defendant knew that plaintiff had received a message announcing the death of her mother, and when defendant well knew that plaintiff had no money to pay railroad fare, the plaintiff was greatly inconvenienced, harassed, worried, humiliated, and suffered great mental anguish in being prevented from attending her mother's funeral and burial, and has been injured and damaged in the sum of $5,000."

While the defendant company did not know that plaintiff would need this money for the purpose of attending her mother's funeral at the time of the contract entered into for sending the message, here are allegations that defendant, knowing that she was without funds and that she had received a message announcing her mother's death, negligently and carelessly failed to give her the money or notify her it was there, though she was in the office of the company on the afternoon of 22 November and had a conversation with the company's agent and operator. If these allegations are established at the time it would constitute a tort on the part of the company and justify an award of any direct damages for reasonable additional expenses incident to plaintiff's prolonged stay at Black Mountain, and also for mental anguish for being prevented from attending her mother's funeral, if that was in consequence of the company's default, and such consequence, in the judgment of the jury, was reasonably probable under all the facts as they existed at the time of tort committed.

There is no error, and this will be certified, that the case be proceeded with in accordance with this opinion.

Affirmed.