## LANIE LEHUE v. WESTERN UNION TELEGRAPH COMPANY.

### (Filed 22 May, 1918.)

1. **Telegraphs—Money Orders—Stipulations—Principal and Agent—Banks —Negligence.**

     A stipulation printed upon an application for the transmission of money by telegraph, and signed by the applicant, that if the place for the payment of the money was not a money order office, the company should be allowed to employ a bank to make ultimate payment, as the agent of the sender without liability for the neglect of the bank, is a valid and reasonable one.

2. **Same—Contracts.**

     Where the applicant for the transmission of a money order by telegraph has been correctly told by the agent of the company that it would be necessary for it to employ a bank for its ultimate payment, and he makes his application under the printed stipulations that the company would not be liable for the neglect of the bank which was made the agent of the sender for the purpose; and it appears that the company was not in default in performing its duties under the circumstances; *Held*, there has been no breach of contract by the telegraph company permitting a recovery against it for mental anguish.

3. **Telegraphs—Torts—Damages—Mental Anguish.**

     In order to recover damages against a telegraph company for mental anguish for breach of a public duty in negligently failing to promptly transmit a money order by telegraph, the damages must reasonably and probably flow from the tort; and where the money is sent by the husband for the return home of his wife and another telegram is sent later to her announcing the death of her mother, which was unknown to the parties until then, mental anguish for her failing to receive the money in time to attend the funeral of her mother is not recoverable.

ACTION, tried before *Lyon, J.,* at October Term, 1917, of WAKE, upon these issues:

Did the defendant negligently fail to pay to the plaintiff the sum of $11.45 within reasonable time, as alleged in the complaint? Answer: "Yes."

What amount of damages, if any, is the plaintiff entitled to recover? "$750."

From the judgment rendered defendant appealed.

*Douglass & Douglass for plaintiff.*
*Albert T. Benedict, Pace & Boushall, Tillett & Guthrie for defendant.*

BROWN, J. This cause was before this Court on demurrer to complaint and is reported in 174 N. C., 332. The demurrer was overruled and the cause remanded for trial.

36—175

We adhere to what is held in the opinion on the first appeal, but we think the facts brought out fully on the trial present a different case from that alleged in the complaint.

It now appears that plaintiff's husband deposited the $11.45 with defendant at Raleigh between 7:30 and 8 A. M., 22 November. He informed the lady clerk that his wife, the plaintiff, was in Black Mountain without means and that he desired to transmit the money to her at once. The plaintiff's husband testified: "She asked me if my wife was known in Black Mountain and she said the money would have to go through the bank."

The husband then signed the application for the money order, which contained the following stipulation: "When the company has no office at destination authorized to pay money, it shall not be liable for any default beyond its own lines, but shall be the agent of the sender, without liability and without further notice, to contract on the sender's behalf with any other telegraph or cable line, bank or other medium for the further transmission and final payment of this order."

Two very important facts are established:

1. The plaintiff's husband was informed that Black Mountain was not a money order office and that the money must be transmitted through a bank.

2. That at the time the plaintiff's husband did not know of his mother-in-law's death, neither did the wife, and consequently the defendant could have no knowledge of it.

It appears that the message was promptly sent and the money transmitted by Battery Park Bank of Asheville and received by the Commonwealth Bank at Black Mountain by 11:20 A. M. of November 22d. That bank at once mailed notice to plaintiff to call for the money. She failed to do so up to 2 P. M., when the bank closed. Plaintiff appeared next morning and received the money. It was 3:30 P. M., 22 November (after bank closed) that plaintiff received telegram announcing the death of her mother.

It is manifest that there was no unreasonable delay upon the part of defendant in transmitting the money through its nearest money order office at Asheville to the bank at Black Mountain. The reason plaintiff did not receive the money before the bank closed was because the bank notified her by mail, as is usual, to call for the money and she failed to receive notice in time to call before the closing hour.

That the palintiff cannot recover damages for her alleged mental anguish for a breach of contract is quite plain. No such damage could have been within the contemplation of the parties when the contract was made. At that hour neither the husband nor his wife knew of the death of her mother. She did not learn of it until 3:30 P. M. that day.

The plaintiff, however, bases her right to recover *ex delicto*. To justify this plaintiff must show that the defendant has violated a public obligation it owed to her and that the damages suffered are "such as were *reasonably probable* under the relevant facts existent at the time of tort committed." This case, 174 N. C., 332.

We fail to see in the evidence any breach of duty. The defendant had the right to establish certain offices as money order offices, and also to refuse to establish other offices as money order offices. Black Mountain was not a money order office, and there is no suggestion that there was any obligation upon the defendant to establish a money order office there, and particularly in the winter time, when, as a matter of general knowledge, Black Mountain is but a small town and the receipts wholly inadequate to enable the company to make money order payments.

In accepting the message, both the plaintiff's husband and the defendant understood that the payment was to be made through a bank, and at the time the money was accepted in Raleigh the plaintiff's husband expressly agreed that if the ultimate destination was not a money order office, then the telegraph company might employ a bank as the agency to complete the delivery, and that the bank would in such a case be the agent of the plaintiff, and the defendant would not have any liability for the acts of the bank.

The stipulation printed in the money order application signed by the husband contains a distinct provision that if the place at which the money was to be paid was not a money order office, then the company should be allowed to employ a bank to make the ultimate payment and that the company would not be liable for the acts or neglect of the bank. The bank was made the agent of the sender for the further transmission of the money beyond the defendant's money order offices.

There is nothing unreasonable or against public policy in this. The defendant did not undertake to contract against its own negligence, but only to provide a means which the sender, if he chose to do so, could avail himself of for transmission of money beyond defendant's lines. In this there appears an analogy between this case and the case where a telegraph company is called upon to deliver an ordinary message at a point beyond its lines, when it is compelled to use a telephone company. All of the courts, including our own, have held that where these public service corporations are not able to make the ultimate delivery themselves, they have the right to limit their liabilitiy to their own lines. 6 Cyc., 479, and cases cited.

In a leading case, where this subject is fully discussed, the Supreme Court of Tennessee said: "The other provision embodied in this regulation is that the telegraph company limits its liability to losses occurring on its own lines. This has usually been treated as an offer of spe-

cial terms. As such, it constitutes, with the assent of the employer of the company, a valid contract. This provision is clearly just and reasonable. In the absence of a partnership relation between them, one telegraph company has no more authority over another company than an individual has. A telegraph company should be entitled, therefore, to contract specially with one who wishes to employ it that it shall not be liable for loss occasioned by the act of a connecting company."

But perhaps the most conclusive case is the recent decision of *Telegraph Co. v. Carter,* 156 S. W., 333, where the Court said:

"No obligation rested upon appellant to accept a message for points beyond its own line, and where it had no office or facilities for delivery. 37 Cyc., 1664, par. 9; *Tel. Co. v. Hargrove,* 14 Tex. Civ. Ap., 79. It is likewise true that it is absolved from liability for default or negligence occurring on its connecting line resulting in injury to appellee."

Speaking with reference to such stipulations, it is in effect said in Cyc., 37, 1992, par. 6, that such stipulations are reasonable and valid, and will protect the initial carrier against liability for negligence on the part of any other company to which the message is necessarily transferred, citing a line of cases in note 70 thereunder in support thereof. See, also, Jones on Telegraph, where the same doctrine is announced, section 446.

The plaintiff's husband accepted the defendant's services to transmit the money with full knowledge that it had no money order office at Black Mountain and that he must use the services of a bank, *acting as his agent,* to get it to his wife.

Assuming for the argument's sake that there was a breach of public duty by defendant in failing to deliver the money promptly, under the facts plaintiff cannot recover mental anguish damages for the reason that at the time the tort was committed under the relevant facts then existent, such damages could not be reasonably probable to flow from the tort.

Neither the husband, wife, or defendant knew that the mother was dead and how could it be within the bounds of reasonable probability that her failure to receive the money sent for another purpose would cause her mental suffering.

The motion to nonsuit is allowed.

Reversed.