## WESTERN UNION TELEGRAPH CO. v. SPEED.

### No. 8182.

Court of Civil Appeals of Texas. Austin.

March 11, 1936.

Rehearings Denied April 8 and 22, 1936.

Francis R. Stark, of New York City, and Naman & Howell and Wm. J. Boswell, all of Waco, for appellant.

A. J. Lewis and Wallace & Wallace, all of Cameron, for appellee.

McCLENDON, Justice.

Appeal from a judgment in favor of W. N. Speed, awarding damages against appellant for failure to deliver a message, addressed to his wife, announcing the death of her mother. The message was embodied in a money order written upon one of the appellant's forms, which provided, "Message to be delivered with the money order," and contained the following stipulation on the reverse side:

"Money Orders are subject to the following conditions: * * *

"When the Company has no office at destination authorized to pay money, it shall not be liable for any default beyond its own lines, but shall be the agent of the sender, without liability and without further notice, to contract on the sender's behalf with any other telegraph or cable line, bank or other medium, for the further transmission and final payment of this order."

The message was sent from Cameron, Tex., to Dilley, Tex. Appellant had an office at Dilley, but it was not "authorized to

pay money"; and the order and message were delivered to the Alamo National Bank at San Antonio, and by that bank transmitted by appellant's wires to its correspondent bank at Dilley. Appellant pleaded this stipulation as a defense, contending that it performed its full duty when it delivered the order and money to the San Antonio bank. Appellee filed a verified plea of non est factum to the stipulations on the reverse side of the order. The case was tried.to a jury upon special issues, and the findings supporting liability were predicated upon appellant's negligent failure to deliver the message to Mrs. Speed.

We have reached the conclusion that the evidence does not support the plea of non est factum, or a judgment predicated upon negligence of appellant to deliver the message. Under this view it will not be necessary to detail the various alleged errors of the trial court, but only to state substantially the evidence in this regard.

Mrs. Gandy, the mother of Mrs. Speed, died suddenly at 4 o'clock a. m., Friday, October 13, 1933, at her home about eleven miles southeast of Cameron. About 8 o'clock that morning, Sterling Gandy and two of his brothers (all sons of Mrs. Gandy and brothers of Mrs. Speed) went to appellant's office at Cameron for the purpose of sending messages to Mrs. Speed and other relatives, and money to Mrs. Speed for transportation. In charge of the office and present at the time were Jones, the manager, and Miss Holloway, his assistant. The Gandys informed Jones and Miss Holloway that they wished to send a message to Mrs. Speed informing her of the death of her mother and the hour of the funeral, and to send her $7. They inquired as to the best method of sending the message and money, and were informed that it would be cheaper and just as satisfactory to send it all in one message. Jones informed them that appellant had an office at Dilley, but no mention was made of the fact that it was not a money paying office. The message was then dictated to Miss Holloway, who wrote it on the money order blank, and it was then signed by Stephen Gandy. It read: "Mother died four A. M. Funeral four o'clock Saturday. Both come." On the face of the blank and just above the message was the following: "(A message, to be delivered with the money, costs but a little more and saves a separate telegram. It may be written on the following lines.)" Just preceding the money order was the following: "Subject to the conditions below and on back hereof, which are hereby agreed to." None of the Gandys read or knew of the stipulations on the back of the order. They had every opportunity to do so, however, and nothing was done or said by appellant's employees to ·prevent them, further than might be inferred from the fact that they were informed that appellant had an office at Dilley, but no mention was made of the fact that it was not a money paying office. Miss Holloway testified that when she was informed that the Gandys wanted to send money she turned to Jones, who was standing some five feet away, and asked him how it would be handled, and he replied, "Through banking channels." This was corroborated by Jones but denied by the Gandys. The following is from Jones's testimony in this connection:

"Q. What made you make the statement at the time that the message would have to be handled through banking channels? A. Well I advised them of that fact because they are subject to indefinite delay when they are handled through banking channels."

The Gandys returned to appellant's office about 1 o'clock p. m. the same day, and inquired of Jones whether it would not be well to send Mrs. Speed another message; and were informed that that was not necessary, as the message must have been delivered, otherwise he would have received a report on it. It is not necessary to detail what further transpired, except that the message and money were delivered to the San Antonio bank with reasonable promptitude, and negligence in nondelivery to Mrs. Speed arose after such delivery.

█ That the stipulation in question is a reasonable one, and binding upon the sender and those whom he represents, is now well established. Western Union Tel. Co. v. Carter (Tex.Civ.App.) 156 S.W. 332; Lehue v. Tel. Co., 175 N.C. 561, 96 S.E. 29, 30; Western ·Union Tel. Co. v. Bowen, 203 Ala. 409, 83 So. 283; Western Union Tel. Co. v. Munford, 87 Tenn. 190, 10 S.W. 318, 2 L.R.A. 601, 10 Am.St.Rep. 630; 26 R.C.L., p. 576, § 79; 62 C.J. p. 273, § 324.

█ As there was no fraud nor concealment regarding the stipulations on the back of the order, the sender and sendee were both bound by the stipulations, regardless of who actually wrote the message. This question is fully discussed, with citation of authorities, in Western Union Tel. Co. v. Vann (Tex.Civ.App.) 288 S.W. 541, a case on all fours, as to this particular question,

with the case at bar. See, also, 62 C.J. p. 173, § 195; Id., p. 174, § 196; 26 R.C.L. p. 581, § 84.

While, therefore, the judgment cannot be supported upon the theory on on which the case was submitted to the jury (negligent failure of appellant to deliver the message), we think, however, that the evidence does present a case of liability upon another theory, namely, that of a breach of duty on appellant's part in informing the Gandys that embodying the message in the order was as satisfactory as sending a separate message, and in failing to inform them of the manner in which the message would be handled, and that so handled it would be subject to indefinite delay. If this information had been given, the Gandys would then have been in position, had they chosen to do so, to send a separate message conveying the additional information that expense money was being sent through banking channels. If such message had been delivered at any time during the day of October 13th, Mrs. Speed could have gotten the money and reached her mother's home before the funeral. The importance of a prompt delivery of the message was well known to appellant's agents, both from what transpired at the time the message was filed and the solicitude of the Gandys upon their later return to the office. Jones had actual knowledge that a message sent through banking channels was subject to "indefinite delay." Such delay no doubt results from the fact that banks are not engaged in the business of transmitting messages, and are therefore not equipped to render efficient service in this regard. In so far as the bank was concerned, transmission of the message was only incidental to transmission of the money. The Lehue Case, above, illustrates the method by which banks handle transactions of this character. There was no message, however, accompanying the money order in that case. The bank received the order at 11:20 a. m., and at once mailed notice to the plaintiff to call for the money, which she failed to do up to 2 p. m., the closing hour of the bank. We quote from the opinion: "It is manifest that there was no unreasonable delay upon the part of defendant in transmitting the money through its nearest money order office at Ashville to the bank at Black Mountain. The reason plaintiff did not receive the money before bank closed was because the bank notified her by mail, *as is usual,* to call for the money, and she failed to receive notice in time to call before the closing hour." (Italics supplied.)

In none of the cases cited was a bank employed to transmit a message in addition to delivering money. In fact, the stipulation in issue does not appear on its face to contemplate anything but the transmission of the "order." It authorizes appellant "to contract on the sender's behalf with any * * * bank or other medium, for the further transmission and final payment of this order." It seems clear to us that the evidence will support a finding of breach of duty on the part of appellant to furnish information as to the manner in which the message would be handled and the fact that it would be subject to indefinite delay if so handled.

The proper procedure in the circumstances is to remand the cause for further trial. Buzard v. Bank, 67 Tex. 83, 2 S.W. 54, 60 Am.Rep. 7; Camden Fire Ins. Co. v. Yarbrough (Tex.Com.App.) 215 S.W. 842; Pershing v. Henry (Tex.Com.App.) 255 S. W. 382; St. Louis Southwestern Ry. v. Seabold (Tex.Civ.App.) 277 S.W. 229; Trail v. Maphis & Day (Tex.Civ.App.) 25 S.W.(2d) 627.

The trial court's judgment is reversed and the cause remanded.

Reversed and remanded.