No. 2105.

B. F. BUZARD *v.* FIRST NATIONAL BANK OF GREENVILLE.

1. PARTNERSHIP.—A banking house brought suit against P. on a note executed by him, and joined B. as a defendant, alleging that P. & B. were partners in the cattle business, and that the note was given for a partnership debt. P., who had been acting as B.'s agent in purchasing and selling cattle, under a salary, received from B. on settlement sixteen thousand five hundred dollars, advanced under a contract as follows: P. was to purchase cattle and take care of them until sold, using the money for that purpose. B. was to receive back after final sale the money advanced, and the net profits, if any, were to be divided equally. If there were no net profits after deducting the money to be used in purchasing and taking care of the stock, then P. was to receive nothing. The one-half of net profits were to be retained by P. in lieu of the salary he had formerly been paid. The cattle were to be branded in the V brand, claimed by B., but without B.'s knowledge was recorded in P.'s name. P. was not to pay prices greater than those directed by B., and not to sell for less than prices that B. specified. B. did not think he was forming a partnership; did not know in whose name the cattle business

was carried on; there was no agreement regarding the name under which the business was to be carried on. But he did know that the money arising from sales was deposited in P.'s name. The note sued on was executed in renewal of another for the money advanced by the bank to enable P. to carry on the cattle business, and it was expended chiefly in buying cattle which were branded V. The advances of money were made on P.'s representations that the money would be used in the cattle business, and relying on B.'s solvency. P. represented himself as B.'s partner, and drew drafts in the name of B. & P., but B. had no knowledge of this, nor had the bank when it advanced the money. It was sought by the petition to hold B. responsible as a partner and not as P.'s principal in an agency. On the above state of facts, *held:*

(1) Where one furnishes money to another under an agreement that he who receives it as agent for the owner is to use it in a designated business and receive a part of the net profits as compensation for his services, he who thus receives the money is not thereby constituted a partner of him who advances it.

(2) The doctrine above advanced, held in Cox v. Hickman (8 H. L. C., 268), reversing former English decisions during half a century, and was finally incorporated in the act of 28 and 29 Victoria, C. 86.

(3) B., whether liable as principal for the act of P. as his agent or not, was not liable under the facts above stated as P.'s partner.

2. CASES REVIEWED—Cothran v. Marmaduke & Brown, 60 Texas, 370; and Goode v. McCartney, 10 Texas, 193, reviewed.

3. CASES APPROVED—Ford v. Smith, 27 Wisconsin, 267; Richards v. Green, 13 Iowa, 44; Redick v. Otis, 33 Iowa, 402; Colwell v. Britton, 54 Michigan, 26, and other cases referred to in the opinion.

APPEAL from Hunt. Tried below before the Hon. J. A. B. Putman.

*B. S. Johnson* and *Perkins, Gilbert & Perkins,* for appellant, on their proposition that the court erred in finding as a conclusion of law from the evidence and facts found, that under the agreement made between defendants Pennington & Buzard at Denison, on or about the twenty-fifth day of June, 1884, they became partners in said cattle business as to all third parties, whether said third parties knew of said agreement or not, and the defendant B. F. Buzard became liable for all debts contracted by said Pennington in carrying on said business, cited Goode v. McCartney, 10 Texas, 193; Ashby v. Shaw, S. C., Missouri, June 21, 1884; Beckwith v. Talbot, 95 United States (5 Otto.), 289; Bradley et al. v. White et al, 10 Metcalf, 303 ; Story on Partnerships, seventh edition, sections 32, 38; 1 Lindley on Partnership, fourth edition, star page 20, and note 1; also, star pages 33 to 43

inclusive; Vandeburgh v. Hull, 20 Wendell, 78; Parsons on Part-nership, 100, star page 92.

*Mathews & Neyland,* for appellee, on their proposition that where one person advances to another a certain specified sum to be used in trade by such second party, and there is no agreement as to the name in which said trade shall be carried on, and said business is conducted by said second party in his own name, with the apparent consent of the first party who made the ad-vance, and property is bought by said second party in his own name, and debts created in the conduct of the business in his own name, then such parties are liable as partners to creditors of such business, notwithstanding they have agreed not to be such, cited Appleton v. Smith; Haas v. Roat, 16 Huh., 526; Bailey v. Clark, 6 Pickering, 372; Sheridan v. Medara, 10 New Jersey Equity, 469; Bromly v. Elliott, 38 New Hampshire, 287; Cashman v. Bailey, 1 Hill 526; Catskill Bank v. Gray, 14 Barbour, 471; Woode v. Valletts, 7 Ohio State, 172; Lengle v. Smith, 48 Mis-souri, 276; Sager v. Tupper, 38 Michigan, 258; Noyes v. Cush-man, 25 Vermont, 390.

GAINES, ASSOCIATE JUSTICE.    The cause of action in the court below was a promissory note executed by one J. R. Pennington to appellee.    Appellee originally sued Pennington alone, but by amendment made appellant a party defendant, alleging that the latter and Pennington were partners in the cattle business, and that the note was given for a partnership debt of that firm.

The leading question in the case is whether a partnership ex-isted between appellant and Pennington or not.    The main facts in relation to this matter appear in the third, fourth, fifth, sixth and seventh findings of the court below, which are as follows:

"Third. Shortly before the second day of June, 1883, the de-fendant Pennington made sale of nearly all the cattle he had so purchased and put in the V brand, for the sum of about eighteen thousand dollars, which sale he reported to defendant Buzard, and in compliance with the request of the latter, Pennington met Buzard at Denison on or about the twenty-fifth day of June, 1883, and they there had a full and complete settlement of said busi-ness up to that date, showing that Pennington had in his hands sixteen thousand five hundred dollars of Buzard's money, for which he was accountable.    Pennington had a portion of this in money with him, and a portion in drafts and deposit receipts,

made out in the name of J. R. Pennington, which he then and there exhibited to defendant Buzard. Defendant Buzard then told Pennington that he had concluded to discontinue the business, as it was not profitable, but after some conversation it was then agreed between them that defendant Buzard was to advance to Pennington the sixteen thousand five hundred dollars which Pennington then had of his money, and that with the money thus advanced Pennington was to purchase cattle in Hunt and adjoining counties, and keep and take care of them, and sell them the next spring, unless a favorable opportunity for selling them should occur earlier. That the expenses of buying, keeping and selling such cattle should be paid out of the money so advanced, and that, on final sale of cattle, defendant Buzard should receive back from the proceeds of sale the sum of sixteen thousand five hundred dollars, advanced by him, if such proceeds amounted to that much, and that the net profits of the business, if any there was, should be divided equally between defendants Buzard and Pennington. If the proceeds of such cattle should not amount to the said sum of sixteen thousand five hundred dollars, after deducting the amount paid for them, and expenses of keeping, etc., then defendant Buzard was to receive all such proceeds, and defendant Pennington was to receive nothing. It was further understood between them that said Pennington was to receive one-half of the net profits as aforesaid for his services in managing said business, in lieu of the salary he received under the prior contract. Said Pennington was not to share any possible losses further than, if there were no net profits, he was to lose the value of his services and labor. The cattle to be purchased under this agreement, were to be by Pennington put in the V brand, and he was to use his discretion in buying and selling and managing said business, except that defendant Buzard gave him general instructions not to pay over certain specified prices for certain classes of cattle, and not to sell same for less than certain specified prices. This agreement was verbal, and was acted upon by both parties. There was no agreement or instructions in whose name the business should be carried on. Defendant Buzard had the greatest confidence in the capacity and integrity of defendant Pennington. Defendant Buzard in entering into said agreement did not intend to, nor did he think he was entering into a partnership with said Pennnington.

"Fourth. The defendant Buzard claimed the V brand. He was in Hunt county, in May, 1883, but did not ascertain that said

brand was recorded as Pennington's, nor did he make any investigations into the matter. He did not know in whose name the cattle business was carried on, but was aware that the money arising from the sales was deposited by Pennington in the latter's own name.

"Fifth. The note sued on was executed by J. R. Pennington in renewal of another note, which other note was executed for moneys advanced by plaintiff to him at various times, for the purpose, as professed by Pennington, of carrying on said cattle business, which he was managing for himself and defendant Buzard, and the greater portion of the money so advanced was expended in the purchase of cattle, which he put in the V brand. One thousand dollars of said money was advanced to Pennington to be used in the purchase of the Waldron pasture, which he said he was buying for himself and Buzard for the benefit of said cattle business, and was used in the purchase of said pasture.

"Sixth. Plaintiff, in making advances, did not rely on the responsibility of Pennington, as it was aware he had little means of his own, but made them relying upon the fact that the defendant B. F. Buzard was interested in said business and knew the latter to be abundantly solvent, and made the said advances upon the representation of Pennington that the money was to be used in said business, and believing it was to be so used.

"Seventh. The defendant J. R. Pennington frequently declared, after said money had been advanced to him, that he and defendant B. F. Buzard were partners in said business, and drew drafts in the name of Pennington & Buzard in the transaction of said cattle business, though defendant Buzard had no notice or knowledge of said declarations or acts, nor had plaintiff such knowledge at the time it advanced the money to Pennington."

Upon this state of facts, the court found as a matter of law that Buzard and Pennington were partners in the business in the transaction of which the note sued on was given; and this finding is assigned as error. Where one furnishes money to another under an agreement with the latter that he as agent of the former is to use it in a certain business and receive a part of the net profits of the business as a compensation for his services, does this constitute them partners as to third persons? This is the point presented, and is one of the vexed questions of the law of partnership. The decisions of the courts of England and of this country, bearing either directly or remotely upon the point, are numerous and conflicting, and it is impossible to reconcile them.

In its discussion, principles have been laid down which, as applicable to every case, do not solve it, and distinctions have been drawn which seem to be theoretical rather than sound. As an example of the former, it has been announced in many cases that the test of a partnership is whether the person entitled to a share of the profits has a direct interest in the profits as such, or has merely a claim against the other contracting party or parties for a sum of money equal to a part of the profits. It is true that a partner has a direct interest in the profits, and that a mere agent, working for a part of the profits as a salary for his services, has simply the right to look to the profits only as a measure of his compensation. But in the absence of a direct stipulation in the contract upon this point (which rarely if ever appears in the cases presented), in many instances we can only determine whether such person has a direct interest or property in the profits as such or not, by first deciding the question of partnership. It follows that, in order to apply this test in such cases, we must first ascertain that the parties are partners, or that they are not such, and thus beg the question at issue.

Let us look now to a distinction which has also been very generally recognized. It is held, in numerous cases, that one who is to receive a part of the profits of a business as a compensation for his services is a partner; but that if he is to receive a sum of money equal to a part of the profits he is not. This is usually applied to the question of partnership as to third parties. Logically there is a distinction. But to make a distinction in law it ought to be shown that there would be a difference in the two cases as to the rights and remedies of the third parties to be affected by the contract. But no such difference is apparent. The property to which creditors have the right to look for the satisfaction of their debts is the same, whether the party is to receive a part of the profits or a sum equal to such part. He must under either contract necessarily receive the same sum. The result in the two cases is inevitably the same, unless we assume that one makes a partnership and the other does not, and thus take for granted the question to be decided.

The distinction between cases in which a compensation for services is given by a part of the gross profits, and those in which a part of the net profits are agreed upon for such services, is also recognized in the older decisions, but seems at a later day to have been somewhat questioned. (Parsons on Partnership, star, 88.) This would seem, however, to rest upon a more substantial

foundation, because a person agreeing to carry on a business for another for a part of the net profits accruing, risks his services in the venture, and in one sense, at·least, may bear a loss resulting from it. These illustrations are sufficient to show the unsatisfactory nature of the tests originally laid down to determine the question of partnership in doubtful cases, and would seem to account, in part, for the conflict of authority which has arisen from an attempt to apply them.

It is impossible to review all the cases bearing upon the question before us. An exhaustive analysis would extend beyond the limits of any ordinary opinion. Besides many of the volumes containing the decisions not being accessible to us, the attempt would be futile, even if it were deemed proper under other circumstances to make it.

As early as 1775, it was broadly laid down in England that "every man who has a share of the profits of a trade ought also to bear his share of the loss." In other words, that a community of interest in the profits of a business necessarily made a partnership. (Grace v. Smith, 2 W. Black., 998.) This doctrine was affirmed in subsequent decisions in the English courts, and continued to be recognized as law in Westminster Hall for more than half a century. It was, however, overturned by the House of Lords in the case of Cox v. Hickman (8 H. L. C., 268), and since that decision, has no longer been considered the law even there. The injustice of the rule that a mere participation in the profits should make one absolutely a partner in the business was so fully seen that legislation was deemed necessary; so that the Act of 28 and 29 Victoria C., 86, was passed, which contained this provision: "No contract for the remuneration of a servant or agent of any person engaged in any trade or undertaking, by a share of the profits of such trade or undertaking, shall of itself render such servant or agent responsible as a partner therein, nor give him the rights of a partner." We quote this distinct enactment because there is high authority for holding that it was merely declaratory of the common law. (Parsons on Partnership, star, 93; see also 1 Lindley on Partnership, star, 42—bottom 77; Ewell's Ev., and 1 Wood's Collyer on Partnership, secs. 31 and 86.)

Many cases involving the question, either directly or indirectly, have been decided by the American courts. It is generally held that a sharing of both profits and losses will constitute a partnership. So also it seems to be well established that an agreement to give a share of the gross profits in consideration of services,

will not render the parties to the contract partners either between themselves or as to third parties. Upon the question as to whether a participation in the net profits will necessarily constitute a partnership, there is serious conflict, the great weight of the later decisions being in the negative; and it is generally conceded by the courts which hold the affirmative that, if the contract is expressly for a sum equal to a proportion of the profits, that this does not of itself create the relation of the partners.

After a thorough discussion of the subject, Mr. Storey thus states the law: "Admitting, however, that a participation in the profits will ordinarily establish the existence of a partnership between the parties in favor of third persons, in the absence of all other opposing circumstances it remains to consider whether the rule ought to be regarded as any more than mere presumptive proof thereof, and, therefore, liable to be repelled and overcome by other circumstances, and not of itself overcoming and con trolling them. In other words, the question is, whether the circumstances under which a participation in the profits exists may not qualify the presumption, and satisfactorily prove that the portion of the profits is taken not in the character of a partner, but in the character of an agent as a mere compensation for labor and services.  *  *  *  If the participation in the profits can clearly be shown to be in the character of agent, then the presumption of partnership is repelled. In this way the law carries into effect the actual intention of the parties, and violates none of its own rules. It simply refuses to make a person a partner who is but an agent for a compensation, payable out of the profits, and there is no hardship upon third persons, since the party does not hold himself out as more than an agent." (Story on Partnership, sec. 37.) In section 2, of chapter 6, of his work on Partnership, Mr. Parsons treats the question, where is a person liable to third persons as an actual partner? and fully discusses the various distinctions and tests which have been laid down. In a leading note to this section he thoroughly analyzes the principal cases. Hear the conclusion in the text. He says: "It must be, however, considered as now settled that a person paid for services rendered to a firm by a share of the profits, if this be given him only as a compensation for service, and he has no interest in the principal and no other interest in the profits, is not liable as a partner." (Parsons on Partnership, star, 92.) The author refers to Conklin v. Burton, 43 Barbour, 435, and the cases cited in his previous notes in the same section. The same

author says that "it has been uniformly held, as in the English law, that mariners who receive for their wages a share in the profits of a voyage are not made partners, either as to rights or liabilities." (Parsons on Partnership, note on star, 76.)

Now let us turn to the decisions of our own courts. In Goode v. McCartney, 10 Texas, 193, the court say: ·

"The evidence relied on to establish the alleged partnership was derived from the statement of the plaintiff, and he stated that Power was not his partner; and this statement accords with the legal conclusion deducible from his further statement that the proportion of the profits which Power was to receive was a compensation for his services as clerk. Such a participation in the profits would not constitute him a partner." It must be admitted, however, that the case was decided upon another point.

In Cothran v. Marmaduke & Brown, 60 Texas, 370, Cothran advanced money to a firm, to be used in buying produce, and was to have, as he testified, a portion of the profits of the business for the use of his money. He also stated it was a loan, and that the profits were in lieu of interest. He was held to be a partner. But the court distinguished this case from that of compensation to an agent, and say: · "The true distinction is, that where a clerk or agent is to receive a fixed portion of the profits as a compensation for his time or labor, that he does this as clerk or agent and not as principal. For the partnership funds may be legally used in paying such clerk or agent for his time and services." However this may be, the court recognize the principle that an agent who receives a part of profits in lieu of a salary is not a partner.

In the case before us, Pennington was to receive one-half the profits of the business for his services. Buzard did not intend to make him a partner, but only an agent. Admitting that his understanding of the legal result of the contract would not change the law, if the contract of itself had made Pennington a partner, still the circumstances attending the agreement show its purpose. Pennington had been in his employment as an agent, working for a fixed salary. The contract had ceased and a settlement had just been had. The agent desired to continue in his service, to which he finally assented without change as to the nature and terms of the employment, except that instead of receiving a fixed salary he was to receive for his services one-half of the profits. We think Pennington continued an agent, and did not become a partner. Ap-

plying to the contract the unsatisfactory test of "profits as profits," previously commented on in this opinion, we think it will appear that he had no direct interest in the profits, and was therefore merely the employe of appellant.   To illustrate this, let us suppose that after purchasing a large number of cattle under the agreement they had risen rapidly in value so as to be worth largely more than their cost, and the expenses incident to the purchase.   The cattle in such case would represent both the capital and profits.   But would Pennington in that event have had any property in them?   It is clear, we think, that he would not. His right under the contract was, upon a settlement of the business, to receive of Buzard compensation for his services to be measured by one-half of the profits, if any.   We can not detect any difference, in principle, between this and the master of a vessel claiming, under a like contract with the ship owners, a part of the cargo for services, of whom Sir William Scott said: "I have no hesitation in pronouncing that these persons can not be admitted to claim.   They are to be considered as mariners, and their proportion of the proceeds of the voyage as their wages."   (The Frederic, 5 Rob. Adm., 8.)

We have refrained from citing the cases in support of the principle here announced.   With the exception of the very recent ones they are cited in the notes to the texts from which we have quoted.   The following late cases are not referred to in these authorities, and are therefore cited here, as being in point and directly sustaining the doctrine contended for.   Colwell v. Bratton (54 Mich.), 26 North Western Reporter, 538; Darrow v. St. George (Colo.), 9 Pacific Reports, 791; Holbrooke v. Oberne, 56 Iowa, 324; Nicholaus v. Therlges, 50 Wisconsin, 491; Beecher v. Bush, 45 Michigan, 188; Richards v. Grinnell, 63 Iowa, 44; Ruddick v. Otis, 33 Iowa, 402; Ford v. Smith, 27 Wisconsin, 267. The important case of Eastman v. Clarke, 53 New Hampshire, 276, we have not before us, but from the syllabus in 2 Central Law Journal, 225, we take it not to be conflict with the principle here decided.

It follows, from what we have said, that we are of opinion that the court erred in its finding of law, that the contract of June, 1883, between appellant and Pennington, made them partners. This works a reversal of the case, and renders it unnecessary to consider the other points presented by the assignments of error.

It is to be noted that the petition in this case seeks to charge

appellant upon the proposition that he was the partner of Pennington, and does not seek to hold him liable upon the note on the ground that they were principal and agent. Hence we have not considered the question of appellant's liability by reason of the latter relation.

Under the averments as they stand, appellee, in order to recover, must prove a partnership and not merely an agency.

In order that appellee may take such further action in the case, by amendment or otherwise, as may be deemed proper, we reverse the judgment and remand the cause.

*Reversed and remanded.*

Opinion delivered December 3, 1886.