**HARDING v. GIDDINGS et al. (No. 2114.)***

(Court of Civil Appeals of Texas. Amarillo.
Nov. 14, 1923. Rehearing Denied
Dec. 5, 1923.)

**1. Partnership ⊂⇒17—Intent of parties to be given effect in determining whether contract created partnership.**

In passing upon the question whether a contract created a partnership, the court must, if possible, give effect to the intention of the parties, having regard for the rule that parties may intend no partnership and yet form one.

**2. Partnership ⊂⇒5—Mere sharing of profits and losses does not show partnership.**

The sharing of profits and losses does not have the effect of establishing a partnership.

**3. Partnership ⊂⇒5—Contract denominated a "lease," providing for participating in profits and losses held not to create partnership.**

A contract denominated a "lease," providing for participation in profits and losses in the handling of cattle, *held* not to create a partnership as between the parties.

**4. Contracts ⊂⇒155—Interpreted against party whose language is used.**

Where one party drew a contract and sent it to another for his signature, and it is susceptible of two interpretations, that interpretation should be given it which is the least favorable to the party who drew it.

Appeal from District Court, Randall County; Henry S. Bishop, Judge.

Action by C. H. Giddings and others against Charles E. Harding. Judgment for plaintiffs, and defendant appeals. Reversed and remanded for new trial.

Turner & Dooley, of Amarillo, W. J. Flesher, of Canyon, and J. C. Risk and Winters, Price & Stevens, all of Chicago, Ill., for appellant.

C. E. Gustavus and Underwood, Jackson & Johnson, all of Amarillo, for appellees.

RANDOLPH, J. Giddings and Harding entered into the following contract in writing:

"Lease.

"This lease, made this 6th day of January, 1919, by Chas. E. Harding of the first part and C. H. Giddings of the second part, witnesseth: That the said party of the first part, in consideration of the rents, covenants and agreements of the party of the second part, hereinafter set forth, does by these presents grant, lease and rent to the said party of the second part the following described property, situated in Deaf Smith and Randall counties, state of Texas, to wit: The Green Valley Ranch, near Dawn, Texas, owned by party of the first part, containing about 20,000 acres. To have and to hold the same unto the said party of the second part from January 6, 1919, to May 1, 1921. And the said party of the second part, in consideration of the leasing the premises, as above set forth, covenants and agrees with said party of the first part to pay said first party, his heirs or assigns, as rent for the same, the sum of eight thousand and no/100 ($8,000.00) dollars, cash rent, payable four thousand ($4,000.00) in cash, receipt of which is hereby acknowledged, and four thousand ($4,000.00) on or before January 1, 1920, and the further sum of one-half of the net proceeds received from the handling of and sale of the cattle from said ranch by said second part, less the actual expenses of purchase, feeding, handling, taxes and other expenses in connection with the handling of said cattle on said ranch; the settlement for the said one-half (½) of the net proceeds last above mentioned to be made within thirty days from the time of settling the last of the cattle handled each particular year.

"If the sale and handling of cattle mentioned in last above paragraph shall result any year in a loss, instead of in a profit, said party of the first part hereby agrees to pay to said second party one half (½) of such loss, settlement to be made the same as provided above for profits.

"Said first party further agrees with said second party to furnish on said ranch for use of said second party enough tools and implements to do the necessary farming on said ranch; also about eight head of saddle horses and eight head of work mules, harness for same and the wagons that are now on said ranch; also the landlord's share for the farm land that is rented to other parties is hereby assigned and transferred to said second party, either as feed or to purchase feed for the cattle handled on said ranch, but not to be included in the items of expense against said cattle.

"The covenants herein contained shall be binding upon the respective parties, their heirs, executors and administrators.

"In witness whereof the said parties have hereunto set their hands the day and year first above written." (Signed by Chas. E. Harding and C. H. Giddings.)

Giddings, on the 13th day of May, 1919, transferred a one-half interest in the contract to Campbell and McElroy. This suit was instituted by appellees in the district court of Randall county, and in their petition appellees allege a partnership between appellant and appellees by virtue of the above contract, and that appellant, Harding, was indebted to them as a partner by reason of certain indebtedness incurred and paid by them. Only the parties to the suit are involved, and no question of estoppel is presented; hence the question of partnership or no partnership relations is to be determined as between the parties, and, under our view, is to be determined by the terms of the contract.

The trial court appointed an auditor, and upon the auditor's report and the contract introduced in evidence in the case that court instructed the jury that the lease contract established the "relationship of partnership" between Harding and Giddings, and that the subsequent assignment of an undi-

⊂⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

vided one-half interest in his interest by Giddings to Campbell & McElroy continued such partnership relations as between the plaintiffs and Harding, with the rights in the plaintiff to have a one-half interest in the net proceeds from the handling and sale of cattle on the Green Valley ranch, and the other half of such proceeds to belong to Harding, and, in the event of a loss, that the plaintiff should bear one-half thereof and the defendants the other half, and that such, partnership extended also to farming operations upon such ranch. And the trial court further charged the jury that—

"The auditor's report filed herein and introduced in evidence was directed. and authorized by the court, and, subject to objections and exceptions made by defendant the various items thereof, hereinafter referred to, shows that the defendant is indebted to the plaintiffs individually in the sum of $1,194.00, and the further sum of one-half of $1,746.31 net loss in the partnership business, for which amounts defendant is liable to the plaintiffs herein unless defendant is entitled to credits and allowances claimed by him, which are hereinafter submitted to you, and, unless you find in favor·of the defendant as to such credits and allowances claimed by him, you will return a verdict in favor of the plaintiffs for said items of $1,-194 and one-half of $1,746.41, or $873.15, one-half, with a deduction therefrom of one-half of $26.50, admitted by plaintiffs in their supplemental petition herein."

In addition the court charged upon other phases of the case not necessary here to set out.

Appellant's first, second, fifth, and sixth propositions present to us alleged error of the trial court in construing the above contract as a partnership contract and in so charging the jury.

[1] The parties to this contract denominated it a "lease contract," and it must be held to be such unless from the whole of such instrument it can be determined that the parties really intended entering into partnership relations, or unless from the very terms of the instrument such relationship was established as a matter of law. Under this contract the only term or terms which might be construed into creating that relationship are those terms providing for participation by Harding in the profits and losses. In passing upon this question we must, if possible, give effect to the intention of the parties, having regard for the rule that parties may intend no partnership ·and yet form one. Freeman v. Huttig Sash & Door Co., 105 Tex. 570, 153 S. W. 122, Ann. Cas. 1916E, 446.

Our courts have attempted to formulate tests by which it could be ascertained whether or not a partnership existed between parties, but such tests, proving unsatisfactory, have been abandoned, and others substituted. The rule as laid down in Coth-

ran v. Marmaduke, 60 Tex. 372, that it is not essential to constitute a partnership that the parties were by agreement to share in the losses, but it is sufficient if they are to have a community of interest in the profits as such, is short in furnishing a test in this case, for the reason that it is left to be determined what is "a community of interest in the profits as such." Where a party, as in this case, is to get an increased rental by reason of expected profits upon the handling and sale of the cattle, it is true that to that extent he has an interest in the profits, but can it be said that he has a common interest with the other parties in such profits as profits?

In the Freeman Case, supra, the facts disclose that Freeman bought into the firm known as the Independent Lumber Company, composed of Yost, Campbell, and Sewell, buying Campbell's one-third interest, with the intention on the part of himself, Yost, and Sewell to incorporate the business. For various reasons this incorporation fell down, and Freeman, with knowledge that indebtedness was owing by the firm, permitted the continuation of the business under the old firm name, and managed by Yost in the same manner as he had conducted the business of the old firm. The Supreme Court held that, while Freeman was not liable for the existing indebtedness of the old firm yet as to those who had become creditors after he bought Campbell's interest he was liable for that indebtedness, and applied the following test to determine Freeman's relationship to the partnership: That Freeman's purchase into the firm established and created between Yost, Sewell, and Freeman, as principal, a relationship that amounted to an agreed joinder of their interests in a common enterprise, its prosecution for their joint account, and an ensuing right in each of them to share in its net returns as such; that Freeman had ceased to be naked co-owner when by clearly implied agreement he permitted his interest to be put to work as capital in the business; that he thereby became a partner under elementary principles of law upon the subject; that there existed by his tacit agreement a community interest, the common enterprise, its operation for the joint account, and a right in the owner of each to share as a principal in its profits as such, which, under the established rule in this state, is the recognized test of the relation.

Appellees strongly urge that the Masterson Case, 100 Tex. 38, 93 S. W. 427, is decisive of the case at bar. In that case Downey & Co., were the successful bidder, and had awarded them a sewer contract. They applied to a surety company to make bond for them, as required by their contract. The surety company required a personal indemnity before making the bond. Downey & Co. also needed as much as $10,000 in money to

begin operations and $17,000 to turn over to the city to make the bonds bring par value, and, being unable to raise the money, they applied to Masterson to secure the money and to have him furnish the required indemnity to the surety company. Masterson demanded from Downey & Co. and received from them a transfer of the contracts to himself, and Downey & Co. proceeded with the enterprise. Being unable to complete the contract, they turned the matter over to Masterson, who took charge of the work, completed it, and was sued by a creditor as a partner of Downey & Co. The Supreme Court in that case held that Masterson was an owner in the enterprise, and said:

" 'If one person advances funds, and another furnishes his personal services and skill, in carrying on the business and is to share in the profits, it amounts to a partnership. It would be a valid partnership, notwithstanding the whole capital was in the first instance advanced by one partner, if the other contributed his time and skill to the business, and although his proportion of gain and loss was to be very unequal. It is sufficient that his interest in the profits be not intended as· a mere substitute for a commission, or in lieu of brokerage, and that he be received into the association as a merchant and not an agent.' * * * .This case is distinguishable from Buzard v. Bank, 67 Texas, 83, 2 S. W. 54, 60 Am. Rep. 7, in these respects: Buzard employed Pennington and furnished him with money to buy cattle, and, for his services, Pennington was to receive a part of the profits of the business. Pennington was distinctly an agent of Buzard. Masterson put his credit and money into the Beaumont contracts against the * * * services of Downey and Kelley, who proceeded as contractors with Beaumont to construct the work. Downey and Kelley were under no obligation to repay to. Masterson the money advanced by him. Masterson took the chances on success for the return of his money and interest thereon. Downey & Kelley were to receive each $100 per month as advances, to be deducted from their share of the profits. Masterson was not to receive his share of the profits as compensation for the use of his money, nor were Downey and Kelley to receive their share as payment for services; but each received the profits as fruits of the joint enterprise—that is, as profits—which made them partners."

It will be observed that the tests applied by the above two cases are applied as between the alleged partners and creditors, and not as between the parties who are alleged to have composed the firm. There is no intimation by the Supreme Court that the tests they apply in these cases will be or should be applied as between parties composing an alleged partnership.

[2] It is held in the case of Fink v. Brown (Tex. Com. App.) 215 S. W. 846, in considering the question as to whether the sharing in the profits created a partnership, that one provision of a contract cannot be taken and a presumption raised upon it at variance with the effect of its other provisions. That the profit-sharing clause in a contract, standing alone, would be but presumptive evidence of a·partnership relation and that considered in connection with the other provisions of the contract showing that the relation of lessor and lessees was thereby intended and constituted, it is not sufficient to raise such presumption.

In the case of Cudahy Packing Co. v. Hibou, 92 Miss. 234, 46 South. 73, 18 L. R. A. (N. S.) 975, it is held that the mere sharing of profits does not constitute one a partner.

In the case of Buzard v. Bank of Greenville, 67 Tex. 83, 2 S. W. 54, 60 Am. Rep. 7, the Supreme Court holds that participation in the profits did not establish the partnership relation.

The sharing of profits and losses does not have the effect of establishing a partnership. 20 R. C. L. § 29, p. 826.

[3] Upon full consideration of the contract in controversy herein we hold that the terms of same do not evidence an intention on the part of Harding and Giddings to enter into a contract of partnership, and that such contract, as it operated as between the parties to it, did not, as a matter of law, establish the relation of partners between them. We do not decide what effect the transfer to Campbell & McElroy by Giddings of a one-half interest, if made without the consent of Harding, could have had upon the relations between all of the parties, as such question cannot enter into the solution as to whether or not the partnership relation existed in the first place between Harding and Giddings by virtue of their written contract.

Under the contract Harding leased his ranch to Giddings for a consideration of $8,000, $4,000 cash and $4,000 to be paid on or before January 1, 1920, and the further consideration of one-half of the net proceeds from the handling and sale of cattle from said ranch (the term of said lease to run from January 6, 1919, to May 1, 1921), less the actual expenses of purchase, feeding, handling, taxes, and other expenses in connection with the handling of said cattle, and bound himself to pay Giddings one-half of any. loss in the handling and sale of the cattle. Consequently one-half of all such expenses and one-half of any loss by reason of the handling and sale of said cattle is recoverable from Harding by appellees, regardless of whether there was a partnership or not. But it devolves on the appellees to show that all such expenses charged to Harding by them were incurred in the business they were engaged in under the contract, and that they were necessary and reasonable. Among the items claimed by appellees to be owing to them from appellant is the sum of $9,968.64 interest upon money paid by them upon money borrowed for

the purpose of purchasing cattle to stock the leased lands. There is nothing in the contract that makes the appellant liable for this item. Under the terms of the written contract Harding was to furnish the land, working tools, horses, and cattle, as below shown, and Giddings was to furnish the cattle. The expenses of handling, keeping, and caring for the cattle incurred in the operation of the ranch and reasonably necessary therefor does not include interest on money borrowed by Giddings et al. to obtain their part of the principal in the undertaking. If Harding had been in debt for the land he could as well have claimed that one-half of the interest due upon his landed indebtedness was to be charged against Giddings et al. The contract does not so provide.

Appellant also bound himself to furnish eight head of saddle horses and eight head of work mules and enough tools and implements to do the necessary farming upon the ranch. Appellees had the right to insist on appellant's furnishing such implements, horses, and mules, and, if appellant failed in doing so, appellees had the right to purchase same and charge them up to appellant; but they had no right to purchase horses and mules additional to those furnished by Harding, and no term of the contract so provides.

[4] The contract may lack in providing a definite agreement between the parties supporting appellee's contention, but, as far as it goes, it is not ambiguous. Giddings had this contract drawn and sent it to Harding for his signature, and therefore it is his language that we are asked to construe. And, while there is no ambiguity in the contract, yet, if it were susceptible of two interpretations, that interpretation should be given it against the party whose language it is. Faulk v. Dashiell, 62 Tex. 646, 50 Am. Rep. 542; Ragsdale v. Robinson, 48 Tex. 398.

Error is assigned on the court's charge instructing the jury that the auditor's report shows an indebtedness of $1,194 and a loss in the operation of the business of $1,-746.31, for the reason that such report does not make any such finding. That portion of the auditor's report was duly excepted to, and was properly presented here. Under our ruling upon the question of partnership, this was an improper charge. However, the report having taken into consideration the item of $9,968.64 interest paid out by appellees for money borrowed, it should not have been considered by the auditor, as it is not recoverable under either phase of the contract.

The other matters presented in appellant's brief will probably not arise on another trial.

Because of the errors committed by the court, as above indicated, this case is reversed, and remanded for a new trial in accordance with the instructions given in this opinion.