## PLANTERS' STATE BANK v. CREEK-MORE. (No. 7027.) *

(Court of Civil Appeals of Texas. San Antonio. Nov. 21, 1923. Rehearing Granted Jan. 30, 1924.)

1. **Partnership** ☞286—**After dissolution neither party may sign note or obligation which would bind other.**

After the dissolution of a partnership neither party thereto may sign any note or obligation which is valid against the other party.

On Motion for Rehearing.

2. **Appeal and error** ☞1001(1)—**Finding of jury sustained by evidence will not be set aside on appeal.**

Where there is ample testimony to support the jury's finding, it cannot be set aside on appeal or ignored.

Appeal from District Court, Cameron County; W. B. Hopkins, Judge.

Action by the Harlingen State Bank against W. J. Creekmore and another, doing business under the firm name of C. F. Kelly, in which the Planters' State Bank intervened as the successor in interest of plaintiff. Judgment for defendant named, and intervener appeals. Reversed and rendered.

Duval West, Jr., of Harlingen, and Harry L. Faulk, of Brownsville, for appellant.

Seabury, George & Taylor, of Brownsville, for appellee.

COBBS, J. The Harlingen State Bank sued C. F. Kelly and W. J. Creekmore to recover upon six promissory notes alleged to be their obligations as partners in the farming and stock-raising business, doing business under the firm name of "C. F. Kelly." The first five notes were signed C. F. Kelly, and the sixth note, for $2,800, is signed alone by W. J. Creekmore. The money represented by all the notes, it is alleged and claimed, was loaned to said parties as a firm obligation, under the firm name and style of C. F. Kelly, of which farming and stock raising firm they were as such jointly and severally liable.

Appellant, Planters' State Bank, of Harlingen, having acquired all the assets of the Harlingen Bank, including the cause of action sued on, intervened herein and prosecuted this cause in lieu of the original, in its name and for its benefit, without objection.

The pleadings of all the parties, offensive and defensive, are sufficient to present all the issues in the case, and therefore render it unnecessary to lose any time with the discussion of the pleadings.

The bank sued on all the notes, including the note for $2,800 signed by W. J. Creekmore alone.

Prior to 1917 both Kelly and Creekmore resided in the state of Oklahoma, and the former, a man without means, was working for the latter on a salary. Creekmore owning the farm in question made the proposition to Kelly to go on his farm in Texas and work it. Creekmore was to furnish the land, mules, and teams to work it, and pay for the water necessary to irrigate all the crops grown and raised on the place; also to furnish the money to buy such cattle as would be placed on the farm, and was also to pay for the labor in raising the crops. The compensation of Kelly was to be one-half of the crops raised on the farm; one-half of the increase of the cattle and stock, or one-half of the profits accruing from said cattle in case they were sold, in the event there were any profits.

In pursuance therewith Kelly went upon said place, cultivated it, purchased, raised, and sold hogs and cattle for a period of three or four years. Creekmore placed money in the bank to the credit of C. F. Kelly, in whose name the account was kept; Kelly drawing upon said account from time to time, and depositing money therein. He was also authorized to execute notes in the name of C. F. Kelly, and renew them from time to time, but Creekmore executed the notes when he was to be individually liable. Finally Creekmore, becoming dissatisfied with Kelly's management, had a full settlement with Kelly and the bank of their business, on the 18th day of March, 1920, and that from then

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction March 19, 1924.

on he wanted his money spent only under the bank's direction on the farm, for water, taxes, and for labor for their men, and thereupon opened with the bank what they called a "farm account" in the name of W. J. Creekmore, but Kelly was to stay on the farm until he could gather his crops for that year.

At that time Creekmore had two notes in the bank, one for $2,000, signed by himself and Kelly, and one for $3,000, signed by himself and Kelly. Kelly advised the bank that of the $3,000 note $200 of the same was his individual obligation. Whereupon Creekmore then executed and delivered to the bank his said note for $2,800 to cover his individual indebtedness, and secured it by a chattel mortgage on the cattle that were pointed out by Kelly to the bank and Creekmore as belonging to Creekmore on his farm, and the bank agreed to have said cattle shipped to the market and sold and the proceeds of the cattle when sold applied on said $2,800 note. W. J. Creekmore paid the $2,000 note, which he also signed, when it matured.

Without the bank's knowledge Kelly shipped out and sold the cattle mortgaged by Creekmore, the proceeds of which were $1,626, and delivered the same to the bank, who applied the same to the credit of the Kelly notes, and refused to credit the same on Creekmore's note for $2,800. There is some dispute of the ownership of and the identity of the cattle mortgaged to Creekmore. It seems that Kelly had also given a prior mortgage to the bank of the same cattle he pointed out to the bank and Creekmore as the cattle of Creekmore, but the bank did not know they were the same cattle.

The cause was submitted to the jury on special issues, and their answers were all favorable to appellee, for whom judgment was entered.

The testimony showed on the part of the bank that it considered the account a partnership account all during the period until March 18, 1920, carried in the name of C. F. Kelly.

"After March, 1920, Mr. Creekmore separated his account under his own name, and then Mr. Kelly switched back from C. F. Kelly account to his own name."

It is further shown by the bank that the note for $100, dated March 24, 1920, was a demand note that the bank took from Kelly after it knew that the so-called partnership had been dissolved, signed by Kelly alone, as was the case with reference to the note for $103.64, dated May 26, 1920, and the note for $380, dated May 22, 1920, each of which were signed after the dissolution, the $380 note being a renewal note. The note for $2,160, dated August 20th, was likewise a renewal note of two notes for $1,000 each and one for $160.

The bank did not look to Mr. Creekmore and was not holding him or expecting to hold him liable on the notes that he had not signed and liable for notes that C. F. Kelly had signed personally. The bank figured on getting the money Kelly owed out of the farm, and never made any demand on Creekmore to pay those notes. Creekmore told the bank, when the settlement was made, that it had better get a mortgage on Kelly's crop, and the bank did so in order to be able to handle the crop. And if it had known when Kelly sold the crop it would have demanded that Kelly turn the proceeds over to it. The bank had released Creekmore on $2,000 of the paper in order that a larger loan might be extended to Creekmore and Kelly, and the bank examiner came around when it had the Kelly paper out and never told him it was expecting to hold Creekmore liable on that paper; "what he don't know don't hurt, you know." The bank released Kelly and put this paper in the very shape that it had it in, in order to be prepared when the bank examiner came around, so that he would find that paper in such condition that there would not be an overloan.

Creekmore testified that the bank told him it was expecting him to pay the $2,000 note, signed by himself and Kelly, and the $2,800 note, that he signed, to secure which Kelly executed the mortgage, and at that time the bank never claimed he owed anything except the $2,800 and the $2,000 notes. The latter he paid subsequently. The $2,800 note was originally the $3,000 note, $200 of which Kelly admitted he owed individually and paid, so that it was reduced to the sum of $2,800, for which Creekmore executed his note aforesaid.

When the settlement was made between Kelly, Creekmore, and the bank, it was stated by the bank that the capital of the bank was only $20,000, and $5,000 was its limit for one borrower, so that when it loaned the $3,000 it could not—

"have both men on the note on account of the limit of the bank. The limit was $5,000, according to the state law, to one concern, so in renewing this note I took C. F. Kelly's name and put it on the $2,160 note, and I took the $3,000 note and had Creekmore sign that and split the account, so our books would show up proper before the bank examiner that no one man owed more than the limit."

The action of the bank in this matter was a clear violation of the banking law, but it is not necessary for us to affirm the judgment of the trial court upon the theory that the courts of equity will not grant relief to one who violates the law, if the recovery is necessarily dependent upon proof of such acts.

In the first place, without discussing the question as to whether or not the acts of the parties constituted a partnership, the subsequent settlement and the act of the bank itself clearly released Creekmore from any such claim. However, the question of the

net profit rule of partnership liability has been a subject of much discussion (see 20 R. C. L. § 39, p. 834; 30 Cyc. 376), and rarely sustained.

Very similar to the facts in this case are the facts in the case of Buzard v. First National Bank of Greenville, 67 Tex. 83, 2 S. W. 54, 60 Am. Rep. 7, in which a most interesting discussion of the question of law applicable in this case is had. See, also, Cothran v. Marmaduke, 60 Tex. 370.

The findings of fact are thoroughly supported by the testimony, as likewise such other findings as were necessary to support the judgment of the court are already sufficiently testified to, if not an issue submitted to, and passed upon by the jury.

[1] It is a well-settled rule, also, that after the dissolution of a partnership neither party thereto has the right to sign any note or obligation that would be a valid obligation upon the part of the other partner or the partnership.

The partnership was dissolved on March 18, 1920, and the notes sued upon, in addition to the $2,800 note, are notes that were executed thereafter, by C. F. Kelly. Daniel on Negotiable Instruments, § 370; White v. Tudor, 24 Tex. 639, 76 Am. Dec. 126.

It is not necessary to discuss as to what mortgage the cattle secured, or as to whose cattle they were, or whether or not they were the Chapa cattle. There is sufficient evidence to support the judgment of the court that the cattle on the Creekmore farm were the cattle covered by the Creekmore mortgage and subject thereto, and the proceeds should have been applied pro tanto to the extinguishment of the $2,800 note. It is not necessary to discuss or set out the testimony on that subject as there are facts and circumstances sufficient to support the findings of the court, upon which judgment was entered.

This is very largely a fact case, involving no new principles of law to be determined; indeed we can safely say, that it is a fact case, and that all of the facts have been found in support of the judgment of the trial court.

We find no reversible error assigned, and the judgment of the trial court is accordingly affirmed.

### On Motion for Rehearing.

Appellant, Planters' State Bank, of Harlingen, urges us to reconsider that part of our opinion that disposed of its third and fourth assignments of error.

The third assignment is:

"As additional error intervener shows that the finding of the jury to the seventh issue submitted was in favor of intervener and defendant, Kelly, in that it found the forty-three head of cattle that Creekmore mortgaged to the Harlingen State Bank on March 18, 1920, were owned by Kelly individually, and that Creekmore had no rightful claim to the proceeds thereof, and the court erred in not holding that said proceeds were entitled to be applied to Kelly's $1,450 note."

[2] The finding of the jury is as stated. This finding of the jury was set aside by the trial court, and we were inclined to sustain it upon the ground that the cattle were covered by the Creekmore mortgage and subject thereto, but a very careful review of the whole case has convinced us that there was ample testimony to support the jury's finding, and for that reason it cannot be set aside here or ignored.

It does appear that all the parties requested the issue as to the ownership of the 43 head of cattle to be submitted to the jury, and on that issue the finding was favorable to appellant.

Having convinced ourselves that we should sustain the verdict of the jury in this case, we therefore grant the motion for rehearing, and reverse the judgment, and here render judgment in favor of appellant.