**EXPRESS PUB. CO. v. PERRY.** (No. 8060.)

Court of Civil Appeals of Texas. San Antonio.
Oct. 31, 1928.

SMITH, J. The Express Publishing Company, appellant herein, is a corporation engaged in the publication of the San Antonio Express and San Antonio Evening News. L. E. Perry, appellee is engaged in the business of operating amusement resorts. At one time he operated Perry's Roof Garden in San Antonio, and after that venture he operated "El Pyron Inn," "Blue Goose Café," and "Ye Olde Barn Inn," out in the country from San Antonio. He advertised the roof garden in appellant's publications, and became indebted to appellant in the sum of $269.70 on open account therefor. Being unable to pay the account promptly, Perry gave his promissory note to appellant in settlement thereof. Subsequently, at Perry's instance, appellant published advertisements of "Ye Olde Barn Inn" upon open account to the amount of $103.60. Appellee having defaulted, appellant brought suit against him on both the note and open account, and from an adverse judgment on both counts, after a jury trial, the publishing company has appealed.

As ground for resisting recovery upon his promissory note, appellee, as defendant below, alleged:

"That it was mutually agreed by and between the plaintiff and this defendant, that in consideration of the defendant permitting the plaintiff to have the free use of El Pyron Inn, a place on the south loop, near San Antonio, Texas, operated by this defendant, including the free use of the grounds, bathing privileges, the barbecue pit, the café, the pavillion, the open air dance hall, and a ten piece orchestra, for an entire day for the use of the employees of the plaintiff for a picnic for said employees, their families and friends, that plaintiff would cancel and return said note to this defendant. That this defendant gave to plaintiff the free use of all of said amusement features above mentioned, and that the employees of plaintiff used the same without cost to plaintiff or to said employees; but that the plaintiff failed to return said note to this defendant. Wherefore, defendant alleges that said note has been fully paid off and discharged."

In its pleadings, appellant, as plaintiff, specifically denied the foregoing contention of the defendant, and alleged that:

The "true facts are that plaintiff has for many years given an annual picnic for its employees, and that the defendant and one William Plum, doing business under the name of Plum & Perry, knowing this, came to the plaintiff prior to the 13th day of July, 1924, and proposed to plaintiff that its annual picnic be held on the premises known as 'El Pyron Inn', which the said Plum and defendant represented to plaintiff that they were promoting or operating as a resort near San Antonio, and which they represented as being suitable for the purpose of holding the picnic, and said Plum and defendant represented to plaintiff that they would be glad to have plaintiff use said grounds for said picnic for no other consideration than the publicity

Huson & Huson, of San Antonio, for appellant.

Guy Cater, of San Antonio, for appellee.

576

which their said resort would get out of the fact that plaintiff has used same for its annual picnic, and'that if plaintiff would write up and give publicity to said resort that plaintiff could have the use of said grounds for said occasion; plaintiff alleges that it inspected said grounds and found same suitable, and accepted said proposition-in good faith, and held its annual picnic there on July 20th, 1924, and that in accordance with said proposition it gave on or about July 13th, 1924, in its newspaper the San Antonio Express, wide publicity to said event featuring said 'El Pyron Inn' resort, and published in connection therewith photographs and pictures of said resort and grounds, said article and illustrations covering more than one-half page of said issue of said paper; that the plaintiff dug and paid for the barbecued pit used by it on said occasion, and also paid the orchestra; and plaintiff further says that it at no time ever had or made a mutual agreement, or had any understanding with defendant, or with Plum & Perry, or any other person whereby the note sued on was to be canceled, and returned to defendant, but that the sole mutual understanding between plaintiff and defendant, and said Plum & Perry in the premises, was that Plum & Perry would give the use of said resort to plaintiff for said occasion in consideration of the publicity said resort would derive from the holding of such event thereon; and plaintiff says that it, in good faith, relied upon said representations of said defendant and said Plum, and held its picnic on said grounds, and gave said publicity to said defendant's said resort, and that the said defendant is estopped to allege any such transaction as alleged * * * · in said answer. * * * "

Upon the issue thus joined, the jury found that it was "true, as alleged by the defendant herein, that it was mutually agreed between himself and plaintiff that, in consideration of defendant permitting plaintiff to have the free use of El Pyron Inn, including the free use of the grounds, bathing privileges, barbecue pit, café, pavilion, dance hall and orchestra, for an entire day for the use of plaintiff's employees, and their families and friends for a picnic, plaintiff would cancel and return to defendant the note sued upon by plaintiff herein."
■ We have very carefully read and considered the whole of the evidence concerning this issue, and conclude that it amply supports the finding of the jury. Appellee in his own behalf, and appellant's president and general manager, and its office and credit manager, in appellant's behalf,. testified upon this issue. Appellee testified to facts which support his pleading in detail. He testified positively and in plain terms that appellant, through its office and credit manager, agreed, on behalf of appellant, to cancel and destroy or surrender the note in consideration of appellant's use of appellee's amusement grounds and facilities for its employees' picnic, and that, in pursuance of that agreement, appellant did use the premises and facilities for the agreed purpose on the day agreed upon.

■ Appellant's president and general manager, and its office and credit manager, denied that such agreement was made, and testified, on the contrary, that the agreement was that appellant was to have the free use of appellee's grounds and facilities in consideration of a write-up of appellee's resort in appellant's newspapers; they admitted the use of the resort for the purposes agreed on, and that appellant paid appellee nothing therefor, insisting that the publicity given the resort, in connection with the write-ups of the picnic, was sufficient compensation for its use, and that it was so agreed between the parties. Thus the issue was squarely presented to the jury, who resolved it against appellant and in favor of appellee. The jurors were the sole judges of the credibility of the witnesses and of the weight to be given their testimony, and, as there was material evidence to support their finding, this court is wholly without authority to substitute its judgment and discretion for that of the jury.

In resisting recovery upon the open account appellee set up the defense:

"That the alleged printing of advertisement matter for this defendant on open account, was not in truth and in fact printed for this defendant, but that such printing was done for the Bexar Amusement Company, and that this defendant was only a salaried employee of said company, and in no wise liable or responsible for the payment of the debts and bills of said amusement company. And this defendant denies that such printing upon open account was done by the plaintiff for him personally or individually, and says that at no time did this defendant promise or agree or contract for the payment therefor."

To which appellant replied:

"That it is not acquainted with the Bexar Amusement Company, described in paragraph 6 of said first amended original answer, and that said advertising covered by the open account sued on was printed at the special instance and request of defendant, who never at any time advised plaintiff that he was merely an agent or employee of such Bexar Amusement Company, if such be in fact true, but that said defendant led and allowed plaintiff to believe that it was dealing with him individually."

Upon the issue thus joined, the jury found that the advertisements for which the open accounts were incurred were not inserted "at the special instance and request of" appellee, and that it was not "understood and agreed between" the parties that appellee "was to become personally or individually liable for the cost of" said advertisements.
Upon this issue appellee testified that the business of the Olde Barn Inn was owned by one Meyers and associates, with whom he had no connection, except as an employee, and that he managed and operated the place for its owners on a salary and commission basis; that he fully advised appellant's office and credit manager of these facts, and

further advised him that appellee was "broke," and could not himself pay for the advertisements; that he did not at any time agree to pay for this advertising, but at all times expressly declined to assume that obligation, and that with this knowledge, and with the understanding and agreement that it was to look for its pay to Meyers and his associates, as owners of the business, appellant ran the advertisements.

■■■ It is true that, upon the other hand, appellant's office and credit manager denied the truth of appellee's testimony, and testified that the advertising was done for appellee, at his instance and special request, and without any knowledge that Meyers or any one else was interested in the concern advertised. But this testimony in behalf of appellant simply raised a conflict in the evidence upon that issue, which the jury resolved in unmistakable terms against appellant. As a matter of law and of course, the jury's finding upon the issue, in view of the conflict, is conclusive, and cannot be set aside by an appellate court. There was sufficient evidence to support that finding, the jury, seeing and hearing the witnesses in person as they testified, believed that evidence, and that settles the question.

■ It is contended that the evidence showed appellee to be a partner in the Olde Barn Inn project, and that this relation rendered him liable for the advertising bill. There was no express finding upon that question, but one must be implied in support of the judgment; there being evidence to support it. Appellee testified that Meyers and certain undisclosed associates advanced the money to establish and operate the Olde Barn Inn, and that appellee managed and operated the concern for Meyers and his associates, for which they paid appellee $40 a week and 25 per cent. of the net profits of the business; that he did not hold himself out to appellant as a partner in the business, but, on the contrary, explained to appellant's agents his relation to the business, that he had no money, that he would not be responsible for the account, but that appellant should look to Meyers and his associates for payment of the advertising account, which, according to his testimony, appellant agreed to do. According to this testimony, which must be taken as true in support of the judgment, appellee's relation to the Olde Barn Inn business was not that of a partner. Buzard v. Bank, 67 Tex. 83, 2 S. W. 54, 60 Am. Rep. 7; Scott v. Com. Co. (Tex. Civ. App.) 240 S. W. 1041.

■ So is it vigorously contended by appellant that Mr. Druce, its office manager, who was also its credit manager, had no express or implied authority to contract with appellee to cancel and surrender the note sued on in consideration of appellant's use of El Py-

ron Inn as picnic grounds for appellant's employees. We overrule this contention. There was no testimony affirmatively showing just what authority Mr. Druce had. Appellant offered no testimony that even tended to restrict his authority to bind his principal in the conduct of the ordinary affairs of a newspaper business. It was shown that he was the corporation's "office" manager, including the powers and duties of its "credit" manager. He passed upon the credit of those seeking credit from the corporation, and his decision thereof was final and controlling upon the advertising department. It was shown, too, that he had authority to settle advertising accounts. He exercised that authority with appellant by accepting the latter's note in settlement of the open account covered by that obligation, and the corporation ratified and confirmed the settlement. If this agent had authority to bind appellant to that agreement of settlement, then it follows as a matter of law that he had authority to bind his principal to the agreement to cancel the note upon the terms alleged by appellee and found by the jury. All the evidence in the case warrants the implied finding that Druce had authority to act for appellant in these transactions, and to bind appellant therein.

There is no error in the record, and the judgment is affirmed.